(No. 39501.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LONNIE ADAMS *et al.*, Plaintiffs in Error.

*Opinion filed January 19, 1967.—Rehearing denied March 27, 1967.*

Ward, J., took no part.

Sherman L. Lewis, of Chicago, appointed by the court, for plaintiffs in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane, Saul A. Perdomo, and Morton Friedman, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Lonnie Adams and his brothers James Adams and Maynard Adams were tried jointly for murder, before a jury in the circuit court of Cook County. The jury failed to reach a decision as to Maynard, but Lonnie and James were found guilty and sentenced to life imprisonment. They appeal directly to this court, assigning a number of trial errors, including the admission into evidence of knives alleged to have been obtained by unlawful search of defendant's home. No claim is made that the evidence is insufficient.

The record shows that about midnight of August 17, 1959, Charles Miller was stabbed to death by defendants on a sidewalk on the south side of Chicago. Defendants then left in their car, which the police traced to an address on South Woodlawn Avenue. It was parked in an alley, and officers followed a trail of blood drops to a second floor apartment. There they pounded on the door and were admitted by the wife of one of the defendants. After a search of the premises they found two knives belonging to defendants, who were thereupon taken to the police station. Defendants were thereafter tried and convicted of murder, but the judgment was reversed by this court and the cause remanded for a new trial because of error in excluding certain evidence offered by defendants. (*People* v. *Adams,* 25 Ill.2d 568.) The facts of the crime are stated in the opinion there and need not be repeated in detail here.

Defendants' first contention is that the officers' entry and search of the apartment without a warrant were unlawful and unreasonable, entitling defendants to have excluded from evidence the knives found in the place. The contention cannot be accepted. The wife of defendant Lonnie Adams testified that when her husband came home he was bleeding, that she and her brothers-in-law were trying to bandage him up, and that she then tried to call the police

and the doctor. Before she succeeded in getting the police call through she was interrupted by a banging on the door and discovered police officers were demanding entrance, and she opened the door to them.

The record shows further that according to cab drivers who were eyewitnesses to the crime they saw the three defendants chase the decedent down the sidewalk and corner him, and a knife fight ensued. Decedent broke away and ran, with defendants in pursuit, but he collided with an automobile after fleeing some 150 feet and fell to the ground. There the defendants caught up with him. Defendants Lonnie and James Adams knifed him to death while the brother Maynard kicked him. They then got in their car and drove away, but one of the cab driver witnesses followed in his cab and noted their license number. This he communicated to police, and after the plates were checked with the auto division the officers in question went directly to the Adams's apartment at the South Woodlawn address.

Officer Durkee testified that when the door was opened by the woman the officers said the name "Adams," whereupon defendant Lonnie Adams emerged from the bathroom and talked to them. He had blood and some wounds on him and said he had a fight at 67th and Blackstone. The officers placed him under arrest and entered and searched the apartment. In a bedroom they found the other two men and in a dresser drawer they discovered two knives, one of which the defendant James Adams identified as his. The court admitted it into evidence as an exhibit.

There was no error in doing so. On this record the trial judge was justified in finding that the officers gained admission to the premises lawfully and that the search was not an unreasonable one. The claim that Mrs. Adams opened the door only because the officers allegedly threatened to push it in is hardly credible in view of her statement that she was trying at the time to reach the police by telephone. The officers made a lawful arrest of defendant,

·and their subsequent search for weapons used in the crime was authorized as reasonably necessary and as reasonably incidental to the arrest. The constitution does not prohibit all searches but only those which are unreasonable. The question of what is a reasonable search following a valid arrest depends on the surrounding facts and circumstances of the case. (*People* v. *Harvey,* 27 Ill.2d 282; *People* v. *Van Scoyk,* 20 Ill.2d 232.) A thorough consideration of those in the case at bar convinces us that the acts of the officers were not unlawful or unreasonable.

The contention is also made that defendants should have been discharged under the fourth term statute. This position is based upon the fact that the mandate filed in the trial court October 24, 1962, after the former review, was withdrawn by this court because of an inadvertent omission therein, a corrected mandate being filed in the trial court on the following November 27. The present trial commenced on March 11, 1963, less than 120 days from the November 27 filing but more than 120 days after arraignment was had on the original mandate. We cannot accept the contention. When the original mandate was recalled the case stood as if no mandate had been issued, and the trial court had no authority to proceed. The time within which prompt trial is required under the fourth term statute cannot be considered as running after the mandate was recalled. This court then had jurisdiction, by virtue of the writ of error previously sued out by defendants, and the People can hardly be held responsible for failure to try them during a period in which the trial court had no jurisdiction.

Defendants next complain that it was error to admit certain photographs of the decedent taken "after the body had been stripped, arranged, and otherwise treated in a funeral home." Arguing that a proper foundation was not laid and that proof of identity was insufficient, defendants claim that "the photographs are hearsay in so far as they

purport to represent the condition of the body immediately following the completion of the incident for which the defendants are indicted." There is no merit in the argument Moreover, a similar objection to admission of such photographs was considered on the former writ of error and we expressly declared their admission was a discretionary matter with the trial judge, in the exercise of which no error was shown. (*People* v. *Adams,* 25 Ill.2d 568.) A similar conclusion must follow here.

Defendants object to an alleged curtailment in their cross-examination of one of the People's witnesses about whether money had been offered to him by the State's Attorney. Examination of the record shows that the question had already been asked several times, the witness repeatedly denying he had received any money. The court did not err in rejecting further repetition of similar questions.

Defendants next maintain the court erred in giving the following instruction: "The Court instructs the jury that even though they believe from the evidence that the deceased struck the first blows, if they further believe from the evidence that he abandoned the attack and fled, then the defendants cannot claim self-defense if the jury believe from the evidence that they pursued the deceased and stabbed him to death." It is claimed that the jury, in determining whether the deceased abandoned the attack and fled, and in determining whether defendants pursued him, was invited "to decide objectively in their own judgment" rather than making the finding according to the defendants' point of view acting as reasonable men. It is argued that the test of self-defense is not whether the evidence shows the danger to defendant to be real but whether it appeared to the defendant acting as a reasonable man that the danger to himself was sufficient to justify the taking of a life. The contention has no merit, for the rule sought to be invoked has no application to the instruction in question. The findings

referred to in the instruction relate not to defendants' mental state but to observable acts. The instruction is not misleading or otherwise improper.

The defendants also contend that the trial court erred in refusing an instruction on voluntary manslaughter. Under the circumstances disclosed by the record we are of the opinion that the alleged error is not open to consideration here. At a conference on instructions the court inquired about a voluntary manslaughter instruction. The prosecutor said "no, not when they put in self-defense. It precludes manslaughter." After a short discussion as to whether a death penalty form of verdict should be given, counsel for the defendant stated "self-defense precludes from a finding  *  *  *." No voluntary manslaughter instruction was tendered by counsel for the defendants. Any doubt as to the intentions of the court, the prosecutor and defense counsel is removed when certain proceedings at the time of the argument of defendants' post-trial motion are considered. Counsel for defendants stated that he was just in the frame of mind of having "dropped his house guard on objections" when the prosecutor said that a manslaughter instruction would be improper. Counsel said that if he had read a certain case which had then recently been decided by this court he would have requested such an instruction. He stated that everybody (the court, the prosecutor and defense counsel) were all in agreement that such an instruction was not proper and therefore one was not tendered and concluded that the ignorance of defense counsel should not prejudice the defendants. It is apparent that the decision not to tender such an instruction was consciously made by defense counsel, allegedly because of counsel's ignorance of the law. Having failed to tender a voluntary manslaughter instruction to the trial court, the defendants cannot now urge that the trial court erred in not giving one.

Defendants next allege that the court improperly communicated with the jury after it had retired, and that de-

fendants should have been permitted to submit more instructions. The contention is based upon the fact that after the jury had been out several hours it communicated some uncertainties to the court, whereupon the court, through the bailiff, advised them to read the instructions. We have searched the record with care and find neither an improper communication to the jury nor an improper refusal to permit additional instructions. Defendants' position cannot be sustained.

The final contention relates to certain pretrial statements made by defendants in reply to questions. A preliminary remark of the examining officer was to the effect that "you are now being questioned in regards to the murder of Charles E. Miller." At a conference out of the hearing of the jury it was agreed between the State's Attorney and defendants' counsel that the statements could be admitted if modified so as to substitute the word "killing" for the word "murder". When the prosecutor read the statements in court he twice used the word "murder", apparently doing so inadvertently. He apologized immediately changing the word to "death", and the court instructed the jury to disregard the word "murder." Under these circumstances we cannot agree with defendants' claim that prejudicial error occurred.

We have carefully examined the record and each of the defendants' many contentions. We are satisfied that the evidence clearly established their guilt beyond a reasonable doubt, and that no prejudicial error has been shown. The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.