**People of the State of Illinois, Plaintiff-Appellant, v. Shir Apodaca, Defendant-Appellee.**

**Gen. No. 53,928.**

First District, First Division.

December 19, 1969.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellant.

No brief for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant was indicted for the offense of armed robbery. Prior to trial defendant's motion to suppress was sustained, and the State appeals from that order. The question presented is the reasonableness of a search and seizure made without a search warrant.

The only witness at the hearing was Police Officer Thomas Glynn. He testified that during the early morning hours of January 23, 1966, he was notified that William Brown, a cab driver, was robbed near 5820 South

Prairie. Officer Glynn and his partner arrived on the scene at approximately 1:20 a. m. They received a description from the victim and noticed that he was in his stocking feet. They observed two sets of footprints in the snow alongside the cab and followed them to an alley near 5849 South LaSalle. One set of footprints was made by shoes with a star on each heel, and the other set was made by a person in stocking feet. At 5829 South LaSalle the footprints made by the person in stocking feet went back in the direction of the robbery scene, and the starred footprints led to the north entrance of a two-flat building at 5849 South LaSalle Street.

The officers arrived at the building about 2:00 a. m. and called Sergeant McCarthy to the scene. The officers knocked on the door and were met by an occupant, Mrs. Green. They told her they were police officers checking an abandoned car and asked to speak to her husband. She replied that her boyfriend was there and took the officers upstairs, where they observed defendant sleeping on a couch. Defendant matched the description given by the cab driver as a male negro, 23 to 27, 5 feet, 9 inches tall, 175 pounds, a crew cut, and wearing a dark blue or black coat and horn-rimmed glasses. The officers observed a pair of shoes alongside the couch with a star on the heel, horn-rimmed glasses were on the end table a few feet away, and a gun was recovered from a jacket on a nearby table. Defendant was questioned and acknowledged that the shoes, glasses and jacket belonged to him. It is this evidence, together with $9 that was found, that was suppressed.

The State contends that the trial court erroneously held that the police officers lacked probable cause to enter the building where defendant was placed under arrest. It notes that the arrest was made within fifty minutes of the commission of the offense, after the police officers had traced footprints in the snow from the scene of the robbery to the building where defendant was

found. It also notes that defendant's footprints stood out due to a star on the heel of each shoe and were accompanied most of the way by the stocking footprints of the cab driver. Among the authorities in point are Warden v. Hayden, 387 US 294 (1967) ; People v. Adams, 36 Ill2d 492, 224 NE2d 252 (1967) ; and People v. Macias, 39 Ill2d 208, 234 NE2d 783 (1968).

In Warden v. Hayden, the police were informed that an armed robbery had occurred and that the suspect had entered a certain house. Minutes later they arrived at the house and were told by the defendant's wife that she had no objection to their searching the premises. The officers arrested the defendant in an upstairs bedroom when it became clear that he was the only man in the house. Weapons, ammunition and clothing were found. In holding that these items were properly admitted into evidence, the court stated (p 298) :

> "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape."

In People v. Adams, supra, police officers, acting on information from several taxicab drivers who had seen a fatal stabbing, found a trail of blood from defendant's parked automobile to his apartment. The wife of a defendant voluntarily opened the apartment door for the police, and the defendant appeared before the officers showing evidence of blood and wounds. Two knives were seized and later introduced into evidence. In holding that probable cause was established and the search reasonable, the court said (p 495) :

201

"The claim that Mrs. Adams opened the door only because the officers allegedly threatened to push it in is hardly credible in view of her statement that she was trying at the time to reach the police by telephone. The officers made a lawful arrest of defendant, and their subsequent search for weapons used in the crime was authorized as reasonably necessary and as reasonably incidental to the arrest. The constitution does not prohibit all searches but only those which are unreasonable. The question of what is a reasonable search following a valid arrest depends on the surrounding facts and circumstances."

In People v. Macias, it is said (p 213):

"Defendant contends the police did not have probable cause to arrest him for the jewelry store robbery nor did they have a right to enter his home by alleged trickery and arrest him without a warrant for a crime committed nearly four months previously.

"We have held that the test of probable cause is whether a reasonable and prudent man in possession of the knowledge which has come to the arresting officer would believe the person to be arrested is guilty of the crime; that it is something less than evidence that would result in conviction and may be founded on hearsay evidence; that it is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act."

And at page 214:

"Defendant next contends that the method of entry vitiated the lawfulness of the arrest even if it was based on probable cause. When the officers reached Macias's home they were admitted by his young son

and to allay his fears they told him they were gas inspectors and asked if they might wait for his father's return. The officers testified that about 20 minutes later when they heard defendant coming up the steps they arrested him on the back porch.

"Defendant's theory is that even conceding the existence of probable cause, he is constitutionally protected against police entry of his home unless the officers first announce their authority and purpose, and that to gain entrance by trickery is equivalent to breaking in. This argument assumes in this instance that the arrest resulted from the entrance but the facts indicate otherwise. . . . But assuming otherwise, the question is what means may an officer use to gain entrance to a house to make a lawful arrest. We are not aware of any Illinois cases specifically in point nor has counsel cited any. However, section 107–5(d) of the Code of Criminal Procedure (Ill Rev Stats 1965, Chap 38, par 107–5(d)) provides: 'All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to make an authorized arrest.' "

And at page 215:

"This same question has been considered in Ker v. State of California, 195 Cal App2d 246, 15 Cal Rptr 767, and affirmed in the United States Supreme Court, 374 US 23, 10 L Ed2d 726, 83 S Ct 1623. This was a case in which officers had probable cause to believe that defendant was in unlawful possession of narcotics. They obtained a key to defendant's apartment from the manager, entered without knowledge of defendant, arrested him and seized various items of narcotics. The California Penal Code, section 844, authorizes breaking in to make a lawful arrest but requires that the officers first give notice of authority and purpose. The Cali-

203

fornia court held the noncompliance with the statute was justified to prevent the destruction of contraband. The United States Supreme Court (374 US at 39, 10 L Ed2d at 741) in affirming quoted with approval from People v. Maddox, 46 Cal2d 301, 306, 294 P2d 6, 9, to the effect that: 'It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. . . . Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance.'

"Applying such reasoning to the facts before us we find that the officers had just reason to believe that they were dealing with a man who had engaged in a violent armed robbery in which one policeman had been shot and three hostages taken as prisoners and threatened with death, that their mission could be perilous, that defendant may already have heard the radio news of his codefendant's arrest and his

204

arrest could be frustrated by further flight. We therefore hold that under the exigent circumstances of this case the officers' method of entry was not unreasonable under either State or Federal constitutions."

In the instant case the police officers were confronted with a situation where a robbery had taken place a short time before they arrived on the scene. The officers reasonably assumed that the footprints in the snow were those of the robber, and they were in "hot pursuit" of him. From the "total atmosphere of the case," an urgency of time existed and prompt action was required. (United States v. Rabinowitz, 339 US 56, 65–66 (1950) ; People v. Panozzo, 48 Ill App2d 385, 390–91, 199 NE2d 259 (1964).) The officers acted reasonably when they entered the house without using force to search for a man of the description they had been given and for weapons which had been used in the robbery and which might be used against them. Through diligence and prompt action they found and arrested defendant, who matched the assailant's description. Therefore, we hold that under the "exigent circumstances of this case," the officers' method of entry, the defendant's arrest, and the subsequent search were based on probable cause and not unreasonable under either the State or Federal Constitutions. (39 Ill2d 208, 234 NE2d 783 (1968).) We conclude the trial court was in error in sustaining the defendant's motion to suppress.

The order of the trial court is reversed, and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded with directions.

ADESKO, P. J. and BURMAN, J., concur.