THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL JONES, a/k/a Darryl Pruitt, Defendant-Appellant.

First District (5th Division)    No. 79-1512

Opinion filed October 31, 1980.

James J. Doherty, Public Defender, of Chicago (Ina S. Marks and Frances Sowa, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Mark A. Graff, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant was charged by information with the crimes of armed robbery (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 18—2), aggravated kidnapping (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 10—2) and armed violence (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33A—2). Following a jury trial, he was convicted of all three offenses and sentenced to three concurrent nine year terms.

On appeal, he contends that: (1) the trial court erred in entering judgment and sentence on both the armed violence and the armed robbery convictions, as both arose out of the same acts; (2) his conviction for armed violence cannot stand since the jury instruction failed to require that the jury determine the type of weapon used during the commission of the crime; and (3) the trial court erroneously sentenced defendant to an excessive period of incarceration when it misclassified aggravated kidnapping as a Class X crime during the sentencing procedure. The essential facts, with the exception of identification testimony, are not seriously disputed.

On November 28, 1978, at about 5:45 p.m. Lola Wakefield arrived at the Evergreen Plaza Shopping Center. She purchased a pair of gloves and some cosmetics and returned a few hours later to her car which was located in the shopping center's parking lot. Before reaching her car, she was approached by two men, one tall and one short. According to Wakefield, the short man was defendant, Michael Jones. The tall man, who was holding a gun, stated: "This is a stick-up." He then took car keys and other belongings from her and gave the keys to defendant. Defendant entered the front seat of the car, and the tall man forced the victim into the rear seat and sat next to him.

The three drove northbound on Western Avenue, eventually stopping at a filling station near 63d Street. Defendant discussed the possibility of robbing the station with the tall man, then drove to another shopping center located at 87th Street and the Dan Ryan Expressway. Upon arriving, defendant asked the victim if her charge plates were "any good." He left the car, but returned about one hour later carrying

packages, one of which contained a shirt that he had bought. Defendant resumed driving the car eastbound, and stopped in an alley so that the victim could use "the washroom." After making a few more stops, they arrived at 103d Street and Sangamon at about midnight. The two assailants got out of the car, and the tall man hit the car with his gun and told the victim to drive off.

Wakefield drove the car directly to the 22d district police station and reported the incident. The next day, she went to a police lineup accompanied by Sergeant John Brines of the Evergreen Park Police Department, and identified defendant as the short man who had driven her car the previous night. The victim also identified some gloves as the ones taken from her during the robbery.

John Frank, an investigator for Visa Card Services, testified at trial that he could identify the time and location of a transaction with a Visa card by information imprinted on a sales draft. According to four sales drafts, transactions had been made on the night of the occurrence at the various locations which corresponded to places where the victim testified that car had stopped. Three drafts were signed by "Mr. Wakefield." On cross-examination, he admitted that no handwriting analysis was made comparing defendant's signature to the ones of the sales drafts.

Officer Walter Morgan of the Chicago Police Department testified that at about 7:15 p.m. on November 29, 1978, he received a call from Goldblatt's Department Store at 333 S. State, Chicago, regarding a man being held for the unlawful use of credit cards. When he arrested defendant at the store, Morgan found gloves in his coat that were later identified by the victim as the ones taken from her on the night of the crime.

Carl West, a security investigator for Goldblatt's testified that he held defendant for the Chicago police after learning that the Visa card that defendant used was obtained in an armed robbery on the previous day.

Defendant's mother and brother testified that defendant was in the basement of the mother's home throughout the entire evening of November 28, 1979. Defendant, testifying in his own behalf, denied any complicity in the crimes in question. He arrived at his mother's house at about 6 p.m. on November 28, 1978, and did not leave until the following day. On November 29, 1978, he took the elevated to the north side of Chicago for a job interview. When he was returning from the interview, he met some acquaintances on the elevated platform who offered him three credit cards in exchange for $35. Defendant purchased the cards and was apprehended when he attempted to use them in making a purchase at Goldblatt's later that evening. While he was in the security office at Goldblatt's, he noticed gloves on a table, along with several small items. All of these items were placed into an envelope by the police and carried away.

OPINION

Defendant initially contends that the trial court erroneously entered judgment and sentence on his convictions for the crimes of armed violence and armed robbery, as both arose out of identical acts.

Where more than one offense is carved from a single physical act, multiple convictions prejudice the defendant (*People v. King* (1977), 66 Ill. 2d 551, 368 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273), and it is proper to enter a judgment and sentence only on the most serious of the offenses. (*People v. Sass* (1979), 73 Ill. App. 3d 554, 392 N.E.2d 399.) Because both of the offenses in the instant case arose out of the same act (*i.e.*, taking property from the victim, Lola Wakefield, by the use of a gun), judgment and sentence can stand only as to one. It is therefore necessary to determine which of the two offenses is the "more serious," and to vacate the judgment and sentence as to the other.

A person commits armed violence when, " * * * while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33A—2.) One is guilty of armed robbery when " * * * he or she violates Section 18—1 [robbery] while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 18—2.) Violation of either of these statutes by the use of a handgun is a Class X crime punishable by 6 to 30 years' imprisonment. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1(a)(3).) According to the information and jury instructions, the underlying felony relied upon by the State to support defendant's conviction for the crime of armed violence was armed robbery. Thus, defendant was convicted of two offenses, prohibiting the same conduct and carrying the same penalty, for his single act in robbing the victim at gunpoint.

A further comparison of these two offenses reveals that the respective penalty provisions differ according to the type of weapon used during the commission of the offense. "Armed with a dangerous weapon" for purposes of the armed violence statute is defined by two categories. A Category I weapon is:

"[A] pistol, revolver, rifle, shotgun, spring gun, or any other firearm, sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code, knife with a blade of at least three inches in length, dagger, dirk, switchblade, knife, stiletto, or any other deadly or dangerous weapon or instrument of like character." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33A—1(b).)

A Category II weapon is "a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33A—1(c).) Violation of the armed violence statute with a Category I weapon is a Class X felony

(Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33A—3(a)), and an infringement with a Category II weapon results in a Class 2 felony, or "the felony classification provided for the same act while unarmed, whichever permits the greater penalty." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33A—3(b).) No such distinction is made in the armed robbery statute, violation of which results in a Class X conviction simply if one is "armed with a dangerous weapon." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 18—2.) The armed robbery section fails to define "armed with a dangerous weapon," but it has been held that a dangerous weapon is something by which death or serious bodily harm may be inflicted on the victim. *People v. Skelton* (1979), 79 Ill. App. 3d 569, 399 N.E.2d 157.

■■ Apparently, the legislature intended by this statutory scheme that the severity of punishment for persons convicted under the armed violence statute is to be determined by the character and lethality of the weapon employed, while violation of the armed robbery statute with any "dangerous weapon" automatically causes a Class X conviction. In sum, armed robbery is the more serious offense, since a higher penalty can be imposed if convicted under that statute as opposed to under the armed violence statute when a Category II weapon (*e.g.*, bludgeon, billy, *etc.*) is used during the commission of the offense. Therefore, defendant's conviction for armed robbery, the more serious offense, shall remain intact and his conviction and sentence for armed violence will be vacated.

This result is also supported under the rules of statutory construction. A cardinal rule of statutory construction ordains that sections *in pari materia* should be considered with reference to one another so that both sections may be given harmonious effect. (*People v. Scheib* (1979), 76 Ill. 2d 244, 390 N.E.2d 872.) Both the armed violence and armed robbery statutes relate to the same subject (*i.e.*, commission of a felony while armed with a dangerous weapon) and should be construed in a way to give effect to the legislature's intent in enacting them. While both generally deal with the same subject matter, the armed robbery statute is more specific, prohibiting an armed violation of the robbery statute as opposed to the commission of "any felony defined by Illinois Law" with a dangerous weapon under the armed violence statute. Where a particular enactment is found in a statute, it is held to be operative as against the general provisions on the same subject either in the same act or in the general laws relating thereto. (*Johnson v. Town of the City of Evanston* (1976), 39 Ill. App. 3d 419, 350 N.E.2d 70.) Thus, when a defendant is convicted, as in the instant case, under two statutes for the commission of one act, and one of the statutes more specifically describes the prohibited conduct, his conviction and sentence under the specific statute prevails over the general statute that deals with the same subject.

In *Simpson v. United States* (1978), 435 U.S. 6, 55 L. Ed. 2d 70, 98 S.

Ct. 909, defendants were twice convicted and sentenced under two Federal statutes as a result of their commission of two separate armed bank robberies. One statute allowed enhancement of the punishment for bank robbery when the robbery was committed by the use of a dangerous weapon; the other provided for a consecutive penalty in addition to the punishment for the underlying felony if a firearm was employed during the commission of any Federal felony. The United States Supreme Court held that defendants could not be sentenced under both statutes in each case for committing only one act. The holding of the case was based in part upon a rule of statutory construction which dictated that conviction and sentence only under the more specific statute was proper. According to the court, such a rule "gives precedence to the terms of the more specific statute where a general statute and a specific statute speak to the same concern * * * ." (435 U.S. 6, 15, 55 L. Ed. 2d 70, 78, 98 S. Ct. 909, 914.) The court also stated:

> "to construe the statute to allow the additional sentence authorized * * * to be pyramided upon a sentence already enhanced * * * would violate the established rule of construction that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.' [Citations.]" *Simpson*, 435 U.S. 6, 14, 55 L. Ed. 2d 70, 78, 98 S. Ct. 909, 914.

■■ To allow defendant's conviction and concurrent sentence for armed violence to stand in the present matter would permit "pyramiding" upon the already enhanced armed robbery conviction, a result prohibited by *Simpson*. Defendant's conviction and sentence for the offense of armed robbery, standing alone, is the proper punishment for the use of a weapon during the commission of the robbery.

Defendant next contends that the jury instruction failed to direct the jury to determine an essential element of the crime of armed violence, the use of a gun, and his right to a jury trial was therefore abridged.

Because we are vacating defendant's conviction and sentence for armed violence, we need not pass on this issue. Moreover, defendant's failure to object to the alleged defect in the jury instruction at trial operates as a waiver of this issue on review. *People v. Foust* (1980), 82 Ill. App. 3d 516, 401 N.E.2d 1329; *People v. Howard* (1979), 78 Ill. App. 3d 858, 397 N.E.2d 877.

Finally, defendant contends that his sentence was both erroneous and excessive.

The trial court, in imposing sentence upon defendant, stated: "Well, you know that you have been convicted by the jury of three crimes which are known as to fit in the category of Class X crimes. The court has no discretion in the matter." Based upon this understanding, the court imposed three concurrent nine-year terms of imprisonment for the crimes

of aggravated kidnapping, armed violence and armed robbery. The State concedes that the trial court mistakenly classified the offense of aggravated kidnapping as a Class X crime, since defendant was prosecuted under section (a)(3) of the statute which makes kidnapping a Class 1 crime if committed during the course of another felony. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 10—2(a)(3).) The range of sentences for a Class X felony is from 6 to 30 years, and the range for a Class 1 felony is from 4 to 15 years. (Ill. Rev. Stat., 1978 Supp., ch. 38, pars. 1005—8—1(a)(3), (a)(4).) It is the State's position, however, that defendant's sentence was not excessive regardless of the court's error in misclassifying the offenses, as it fell within the permissible range of sentences for a Class 1 felony.

■■ Based upon our decision to vacate defendant's conviction and sentence for the crime of armed violence, and the trial court's error during the sentencing hearing, it is necessary to remand this cause to the trial court for resentencing on defendant's convictions for armed robbery, a Class X offense and for aggravated kidnapping, a Class 1 offense. Although the sentence imposed by the trial court falls within the permissible range of sentences allowed by statute, we will not speculate as to how the court would have ruled had it not been mistaken as to both the number and severity of the offense. Therefore, we need not decide whether the original sentence imposed was excessive.

Accordingly, this case is affirmed in part, reversed in part, and remanded with directions.

Affirmed in part; reversed in part; remanded with directions.

MEJDA and WILSON, JJ., concur.