THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SAMUEL LAVOY, Defendant-Appellant.

First District (2nd Division)    No. 79-1938

Opinion filed December 16, 1980.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant Samuel Lavoy (defendant) and codefendant Jerry Morales (Morales) were each charged with one count of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2) and one count of armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2). The jury returned verdicts convicting defendant on both counts and acquitting Morales on both counts. Defendant was sentenced to serve a single 6-year term for the two convictions.

Defendant appeals, asking this court to determine (1) whether his convictions must be reversed in light of the acquittal of codefendant Morales on the same charges; (2) whether allegedly improper conduct by the prosecutor at trial denied him a fair trial; and (3) whether the trial court erred in entering judgment on both the armed robbery and armed violence counts.

On September 27, 1978, Joseph Kmiec was robbed at knifepoint by two men. As the State's first witness at trial, Kmiec related the following. He was a Polish immigrant who had been in the United States for slightly more than a year at the time of the attack. Kmiec spoke very little English. On the date in question, he was at the corner of North and Milwaukee avenues waiting to meet a friend. As he waited, two men approached him. He identified these men at trial as defendant and Morales. Defendant held a knife to Kmiec's side and the men searched his pockets. A personal note on a scrap of paper and about $24 were taken. During the robbery, a car suddenly arrived on the scene, and two men who turned out to be plainclothes policemen jumped out. Kmiec's assailants ran away when they spotted the policemen. One of the officers patted down Kmiec and told him to wait in the police car. The officer then followed his partner in pursuit of the attackers.

At trial, Kmiec was shown a knife which had been entered into evidence. He was unable to identify it with certainty as the assault weapon, although he believed that it was. Kmiec did identify the scrap of paper which had been taken from him.

Officer Golnick testified to the following. On the night in question, he was assigned to patrol the high crime area which included the location of Kmiec's robbery. While on car patrol with his partner, Golnick observed two men, who were identified by him as defendant and Morales, assaulting Kmiec. Defendant was holding a knife to Kmiec's side

while Morales searched the victim. Golnick pulled his car over and both officers got out. The assailants saw them and ran. Golnick was told by Kmiec that the men had robbed him. Golnick told the victim to get into the police car, and then chased after Morales. Golnick was 30 to 40 feet behind Morales when the latter turned a corner. When Golnick reached the corner, he saw Morales drop down into some grass in front of a building. Golnick and other officers on the scene then arrested Morales.

Officer D'Andrea, Golnick's partner, chased defendant from the crime scene. He never lost sight of defendant during the chase. Defendant threw away a knife during pursuit, and was finally apprehended in a building into which he had run. D'Andrea recovered the knife after the arrest, and the knife was entered into evidence at trial. Upon being searched, defendant was found to have possession of $24 and a piece of paper with "European writing" on it.

Defendant, speaking through a Spanish interpreter, testified on his own behalf as follows. On the night in question, he was in a tavern where he saw Kmiec, who defendant called "Mr. Jose." Defendant was with a friend, "Miguel," and the two talked and drank with Kmiec. Kmiec told defendant that he wished to buy a watch and gave defendant $20 and a scrap of paper for it. Kmiec then asked defendant for some marijuana. The men left the tavern, and Kmiec decided to return the watch. Suddenly, a car pulled up, two men got out, and defendant and Miguel ran. While running, defendant threw away the watch. He denied possessing a knife that night and stated that Morales was not with him on the occasion and in fact was not known to him at that date.

Morales rested his defense without presenting evidence.

## I.

Defendant contends that there exists a reasonable doubt as to his guilt since Morales was acquitted of the same charges which defendant was convicted of, although the State presented one case against the two.

■■ The general rule is that the failure to convict one codefendant does not raise a reasonable doubt as to the guilt of other codefendants. For a reasonable doubt to be raised, it must be shown that the evidence against each defendant is identical in all respects. *People v. Stock* (1974), 56 Ill. 2d 461, 465, 309 N.E.2d 19; *People v. Brown* (1977), 47 Ill. App. 3d 920, 928, 365 N.E.2d 514.

■■■ In this case, the record makes clear that the evidence against defendant is not identical with that presented against Morales. While victim Kmiec identified both men as his assailants, the jury was not constrained to either accept both identifications as valid or else reject both identifications. Rather, the jury is entitled to believe one part of identification testimony and disbelieve another part. (*People v. Green* (1976), 42 Ill.

App. 3d 978, 993, 356 N.E.2d 947.) Officer Golnick, who apprehended Morales, testified that he was 30 to 40 feet behind the latter during the chase and lost sight of his target part of the time. When seized, Morales did not have any of the items taken from Kmiec. In contrast, Officer D'Andrea chased defendant, remaining only a few feet behind him during the entire pursuit and never losing sight of defendant. Defendant at arrest possessed $24, the amount taken from Kmiec, and a note which Kmiec identified as belonging to him. D'Andrea also saw defendant throw aside a knife during the chase; this knife was recovered by D'Andrea and believed by Kmiec to probably be the robbery weapon. Thus, the jury was given two distinct sets of evidence, each individually relating to one of the codefendants. Defendant's conviction rests upon different evidence than that presented against Morales, although as a general statement the "same evidence" made up the State's case against each codefendant, since they were tried together. Therefore, the jury was warranted in deciding as it did, and no reasonable doubt as to defendant's guilt is created by that decision.

## II.

Defendant contends that the prosecution engaged in several acts of misconduct which prejudiced defendant to the extent of denying him a fair trial.

■ Initially, as noted by the State, this court should consider that defendant failed to raise these matters in his written motion for new trial below. Such failure serves as a waiver of those matters unless the actions of the State are so obviously prejudicial as to deny a fair and impartial trial. (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a); *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.) Thus, the proffered instances must be examined only to determine whether they constitute plain error.

## A.

At one point in the examination of victim Kmiec, the witness refused to give the name of the person he was to meet at the place Kmiec was attacked. The state's attorney noted that this reticence might be the result of fear, stating that defendant was a dangerous man. Defense counsel's objection was sustained, and the jury was instructed to disregard the comment.

■ Where such comments cannot be said to represent a material factor in the conviction of a defendant, or where the verdict would not be different in the absence of the comments, they are not grounds for reversal of the conviction. (*People v. Barnett* (1975), 34 Ill. App. 3d 174, 178-79, 340 N.E.2d 116.) Since it cannot be said that this comment materially led to defendant's conviction, there is no reason to find plain error on this basis.

## B.

During the closing argument, the state's attorney in rebuttal stated that the defense consisted of "confusion by design" and "throw[ing] up a little smoke screen." Defendant claims that this constituted a direct attack on the defense counsel and a charge of deliberate misrepresentation of the evidence.

■■ It is error to charge defense counsel with employing improper tactics to win a verdict for his client. Error can be found in accusing the defense of fabricating its case or of suborning perjury. (See *People v. Stock* (1974), 56 Ill. 2d 461, 467-73; *People v. Freedman* (1954), 4 Ill. 2d 414, 422, 123 N.E.2d 317.) In contrast, where the prosecution merely charges the defense counsel with obscuring the evidence, as here, there is no reversible error committed. (See *People v. Brown* (1977), 47 Ill. App. 3d 920, 930-31.) We find that the language of *Brown* is controlling, and no plain error can be found in the presence of these statements of the prosecution in the record.

## C.

During closing argument, the prosecutor characterized defendant's testimony as being "absolutely ridiculous" and the State's case as "probably the strongest case you'll ever see." Defendant believes that the presence of these comments necessitates reversal of his conviction.

■■ Defendant did not object to the first statement at the time it was made. In the absence of an objection, any error is waived unless the statement is so inflammatory and improper as to require reversal. (*People v. Edwards* (1973), 55 Ill. 2d 25, 35, 302 N.E.2d 306, *cert. denied* (1974), 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438.) In light of the totality of the evidence, the majority of which contradicts defendant's version of the events, we do not believe that reversal is warranted.

■■ The second remark of the prosecutor was objected to by the defense. The objection was overruled by the trial court. To support the contention that this constituted reversible error, defendant cites *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 298 N.E.2d 256. In that case, this court reversed a conviction due to prejudicial closing arguments made by the State. The State's comments included the personal opinion of the prosecutor as to the guilt of the defendant and an argument that the prosecutor's personal reputation stood behind the truthfulness of a witness' testimony. We find the present circumstances to be distinguishable. In closing argument, the defense attorney stated that "the quality of the [State's] evidence is low. This is not the kind of evidence, ladies and gentlemen, that you're going to send a man to the penitentiary for." The contested statement of the prosecution can thus be seen as a rebuttal to the comment of the defense rather than as the personal opinion of the State as to defendant's

culpability. It is unnecessary for this court to reverse defendant's conviction due to these statements.

### III.

Defendant contends that the trial court erred in entering judgment against him for two separate crimes based upon a single act.

■■ A defendant is prejudiced where more than one offense is carved from a single act and convictions are rendered thereupon. (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) Here, defendant was charged and convicted of both armed violence and armed robbery. Only a single act served as the basis of these results: the forcible taking of property from Kmiec while armed with a knife. Therefore, under *King*, we must vacate one of the convictions.

Two recent cases from this District are controlling on this question. In *People v. Crawford* (1980), 90 Ill. App. 3d 888, 414 N.E.2d 25, and *People v. Jones* (1980), 89 Ill. App. 3d 1030, 412 N.E.2d 683, the identical issue was presented to this Division and to the Fifth Division, respectively. In *Crawford*, relying on the *Jones* decision, we determined that when a defendant is convicted of both armed robbery and armed violence arising from a single act, the conviction on the armed violence count must be vacated under the rule of *King*. Therefore, we take such action here and vacate defendant's conviction on the armed violence count.

As to defendant's sentence of a single 6-year term for both crimes, we note that armed robbery under the statute in effect at the time the crime was committed was a Class X offense punishable by a prison term of not less than 6 nor more than 30 years. (Ill. Rev. Stat. 1979, ch. 38, pars. 18—2, 1005—8—1.) We therefore find it unnecessary to alter the sentence entered by the trial court against this defendant.

For the foregoing reasons, we vacate the conviction of defendant on the armed violence count and affirm the armed robbery conviction and sentence entered by the trial court.

Affirmed in part; armed violence conviction vacated.

STAMOS and HARTMAN, JJ., concur.