THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CARL D. ADAMS, Defendant-Appellant.

First District (1st Division)   No. 79-2196

Opinion filed December 22, 1980.

James J. Doherty, Public Defender, of Chicago (Frank P. Madea and Judith A. Stewart, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

After a jury trial, Carl D. Adams, a/k/a Tasha Kingston, was found guilty of murder, armed robbery, and armed violence and sentenced to the Illinois Department of Corrections for concurrent terms of 60 years for murder, 50 years for armed robbery, and 50 years for armed violence. Defendant appeals.

On appeal, defendant contends that (1) the trial court erred in refusing tendered instructions; (2) defendant's motion to quash his arrest, suppress evidence, and suppress his statement was improperly denied; (3) he was not proved guilty of the offenses beyond a reasonable doubt; (4) the State's closing argument was prejudicial; and (5) the court improperly imposed an extended sentence.

We affirm in part, vacate in part.

On the evening of June 29, 1978, the victim Jack Levine had dined with his wife and a friend, Thomas Murphy. Levine paid the dinner bill with cash from a money clip containing several $50 bills. They left the restaurant at 11 p.m. and drove Mrs. Levine home. The victim then drove Murphy home. Levine left immediately after arriving at Murphy's home at 11:30 p.m.

At approximately 11:52 p.m., police discovered the body of Jack Levine in his car in an alley. The victim had been shot in the chest. His

trousers were around his ankles. A large pool of blood covered the passenger side of the front seat. Among the items found in the car was a business card. On the ground beneath the passenger door was a Cook County Jail identification card belonging to Anthony Jackson. A jar of vaseline was underneath the car.

Investigator Zuley testified during the hearing on defendant's motion to quash his arrest that he spoke to Anthony Jackson on July 2, 1978. Jackson stated that defendant, also known as Tasha Kingston, had posted bond for him and kept his jail identification card as collateral. He had also given defendant a business card identical to the one found in the victim's car. Jackson further stated that defendant practiced prostitution near the scene of the homicide and when doing so, carried a gun. Consequently, on approximately July 4, 1978, Zuley issued a "stop order" and placed a wanted for questioning notice, a picture of Adams, and Adams' last known address in the daily police bulletin.

The parties stipulated that if Officer Stanley Zaborek were called, he would testify that on July 12, 1978, at approximately 1 a.m. he and his partner arrested defendant in his apartment. They first proceeded to the address listed in the police bulletin and after speaking to a number of individuals, proceeded to the place of arrest.

At the hearing on defendant's motion to suppress his statement Zaborek testified to substantially similar facts as were stipulated at the previous hearing. He further testified that defendant was advised of his rights at the time of his arrest and taken to the police station. Adams gave a statement at approximately 2 a.m. Zaborek further testified that defendant was transported to Area 6 homicide and between 6 and 7 p.m., gave a second statement. Defendant's statement was not obtained through mental coercion.

Investigator Zuley testified that he spoke with defendant at 10 a.m. on July 12, 1978. He advised defendant of his rights and defendant stated he understood his rights. When Zuley and Zaborek spoke with defendant at 6 p.m., defendant was advised of his rights again. At 10 p.m., assistant State's Attorney Rebecca Davidson and Investigator Zuley spoke with defendant and again defendant received his *Miranda* warnings. At 1 a.m. on July 13, Davidson questioned defendant. The conversation was transcribed by a court reporter and defendant signed the transcript. Zuley further testified that no psychological or mental coercion was employed.

At trial, Dr. Edward Donoghue, who performed the autopsy on the victim, testified that the bullet entered the left side of the victim's chest, travelled straight through the lungs and lodged in the victim's chest. No semen was found on the penis. It was stipulated that oral and rectal swabs showed an absence of sperm and semen.

Officer Zaborek testified that he spoke to Michael Ransom at 11 p.m.

on July 11, 1978. When he and his partner arrived at defendant's apartment, they were admitted by Ransom, an occupant.

Investigator Flood testified that he and his partner went to defendant's apartment at 10 a.m. on July 12, 1978, with a consent to search form signed by Theodore Johnson, a tenant. When Anthony Taylor, another tenant, answered the door, Flood showed him the form signed by Johnson and told him they wanted to recover a weapon which Johnson stated was in the apartment. Taylor consented to the search and signed a consent form. Taylor phoned Michael Ransom, also a tenant, who also consented to the search.

Assistant State's Attorney Davidson testified that she spoke to defendant at 10 p.m. on July 12, 1978. Defendant wanted to tell her what had happened and gave a statement. Thereafter she offered defendant food and drink. At 11:30 p.m. defendant made a second statement. At 1 a.m. on July 13, 1978, a court reporter transcribed defendant's statement. Adams signed the statement in Davidson's presence.

Defendant identified People's exhibit No. 11 as the gun used to shoot the victim. He testified that in his first statement, he stated that he took the gun from the victim in a struggle. Later, he admitted that the gun belonged to him. In his written statement, he stated that he and Theodore Johnson were on Clark Street on the evening in question seeking to perform acts of prostitution. The victim picked them up in his car and drove to an alley. Johnson and Adams each performed an act of fellatio upon the victim in return for $10. After defendant left the car, the victim began choking Johnson, who was sitting in the back seat. Defendant took his gun from his pants and twice warned the victim. The gun "just went off." Defendant further testified that he carried Anthony Jackson's identification card, bus pass, and a jar of vaseline in his purse on the night in question. He also testified that the victim was unarmed.

First, defendant argues that the trial court's refusal to give the tendered instructions on voluntary manslaughter and involuntary manslaughter is reversible error. The trial court gave a voluntary manslaughter instruction based on defendant's unreasonable belief that circumstances justifying the killing of the victim existed. It refused to give the voluntary manslaughter instruction based on sudden and intense passion resulting from serious provocation by the deceased.

■■ We find that the trial court properly refused the latter instruction. The only acts amounting to serious provocation by the deceased are substantial physical injury or assault, mutual combat or quarrel, illegal arrest, and adultery with the offender's spouse. (*People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451, *appeal after remand* (1969), 42 Ill. 2d 60, 244 N.E.2d 593; *People v. Hammock* (1979), 68 Ill. App. 3d 34, 39, 385 N.E.2d 796, 801.) None of these circumstances are present in this case.

■■ The court also properly refused the tendered involuntary manslaugh-

ter instruction. In *People v. Mitchell* (1973), 12 Ill. App. 3d 960, 965, 299 N.E.2d 472, 476, the court stated that the defense theory of self-defense or defense of a third person presupposes an intention to kill or cause great bodily harm. Such a theory is inconsistent with the crime of involuntary manslaughter since the latter offense is by definition a crime of recklessness whereas the former is a crime of intent. Therefore, by arguing that he acted in defense of his friend, defendant is precluded from arguing that his acts were reckless.

■■ Defendant argues that he merely intended to scare the victim, not injure him, and that he accidentally fired the gun. However, the evidence indicates the defendant intentionally and deliberately aimed the gun at the victim, warned him twice to let Johnson out of the car, and then shot the victim. In such cases where defendant voluntarily and wilfully committed an act which had the natural tendency to cause death or great bodily harm, an involuntary manslaughter instruction is not warranted. *People v. Hanrahan* (1978), 64 Ill. App. 3d 207, 380 N.E.2d 1075, *cert. denied* (1979), 444 U.S. 828, 62 L. Ed. 2d 36, 100 S. Ct. 53.

Secondly, defendant argues that the trial court erred in denying his motions to quash his arrest, suppress the evidence, and suppress his statement. He contends that his arrest was unlawful because no warrant was obtained and that the evidence and statement are therefore fruit of the poisonous tree.

In support of his argument that the arrest was illegal, defendant primarily relies upon *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371. However, the court in *Payton* expressly stated that it was dealing with entries into homes made without the consent of any occupant. Here, the police entered defendant's apartment with the consent of Michael Ransom, a tenant. Therefore, *Payton* is inapplicable.

■■ On a motion to quash an arrest, defendant bears the burden of proof. (*People v. Sakalas* (1980), 85 Ill. App. 3d 59, 405 N.E.2d 1121; *In re Potts* (1978), 58 Ill. App. 3d 550, 374 N.E.2d 891.) Here, defendant offered no evidence indicating that the police entry was nonconsensual. On the other hand, the State established at trial that the officers entered with the consent of an occupant. In reviewing a ruling on a motion to suppress, we may consider evidence produced at trial. *People v. Braden* (1966), 34 Ill. 2d 516, 216 N.E.2d 808.

■■ The fact that the entry was consensual validates the arrest. (*People v. Sakalas* (1980), 85 Ill. App. 3d 59, 405 N.E.2d 1121; *People v. Genus* (1979), 74 Ill. App. 3d 1002, 393 N.E.2d 1162.) In *Genus*, the court held that the fourth amendment was not violated where the police entered a home with the consent of an occupant. Because the arrest was valid, the evidence seized thereafter and defendant's statement are not fruit of the poisonous tree.

Alternatively, defendant argues that his written statement was co-

erced and therefore involuntary. The factors he raises in support of this contention are his detention in the police station for 24 hours and the State's failure to present evidence at the pretrial hearing that defendant was offered food and drink and allowed to use the washroom.

██ In determining the voluntariness of a statement, the test is whether the statement was made freely and voluntarily without compulsion or inducement overcoming defendant's will. (*People v. Murdock* (1977), 50 Ill. App. 3d 198, 365 N.E.2d 1301, citing *People v. Prim* (1972), 53 Ill. 2d 62, 689 N.E.2d 601.) Here, the State made a *prima facie* showing of voluntariness. The witnesses testified that defendant was advised of his rights on numerous occasions and was not coerced. Hence, the burden shifted to defendant to produce evidence that the statement was involuntary. (*People v. Slaughter* (1978), 59 Ill. App. 3d 159, 376 N.E.2d 33.) Defendant did not produce sufficient evidence. His detention at the police station is not of itself evidence of coercion. (*People v. Slaughter.*) Furthermore, Davidson testified that she offered defendant food and coffee. For these reasons, we find that the trial court did not err in denying the motion to suppress his statement.

Third, defendant maintains that he was not proved guilty of murder, armed robbery, and armed violence beyond a reasonable doubt.

The credibility of witnesses and the weight to be given their testimony are within the province of the jury. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) The jury was properly instructed as to voluntary manslaughter and murder. In our opinion, the facts are sufficient to establish defendant's guilt of murder beyond a reasonable doubt.

██ In *People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153, 158, the court held that a conviction for armed robbery may be based on circumstantial evidence where it is of a strong and convincing character such that the jury is satisfied of defendant's guilt beyond a reasonable doubt. (See also *People v. King* (1975), 26 Ill. App. 3d 725, 325 N.E.2d 394.) Here, defendant admitted being armed. The evidence indicates that the victim had money 22 minutes before the police discovered the body and that no money was found after the search. These are sufficient circumstances to convict defendant of armed robbery.

██ However, defendant's conviction for armed violence cannot stand. In *People v. Crawford* (1980), 90 Ill. App. 3d 888, 414 N.E.2d 25, the second division of this court held that an armed violence conviction is inappropriate when based on the same physical acts supporting an armed robbery conviction for which defendant was sentenced. Here, defendant's conviction for armed violence is based on the same physical acts supporting his murder and armed robbery convictions, both of which are more serious offenses. Therefore, on the basis of *Crawford* and *People v. Jones* (1980), 89 Ill. App. 3d 1030, 412 N.E.2d 683, cited therein, we vacate defendant's sentence for armed violence.

Defendant also contends that the prosecutor's reference during closing argument as to the victim's family was prejudicial. The comment complained of is as follows:

> "Well, ladies and gentlemen, I admit to you that all we have is the photograph of Jack Levine, which you will see. But, ladies and gentlemen, his life is over. His wife is a widow. His children are without a father. Don't tell me * * * 'No big deal.' That man's life is over."

■■ Reference to surviving family members in closing argument is error. (*People v. Dumas* (1977), 49 Ill. App. 3d 756, 364 N.E.2d 616.) The statement of the prosecutor, taken in context, was error in that its apparent purpose was to prejudice the jury. However, the comment was not so inflammatory as to sway the jury and was therefore harmless error.

Finally, defendant argues that the trial court was precluded from imposing an extended sentence where defendant received no notice from the State prior to sentencing that an extended term would be imposed and where the court on its own initiative sought an extended term. Defendant acknowledges that no notice is required prior to trial.

■■ Imposition of a sentence is within the sound discretion of the trial court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) This same rule applies to the extended sentences. (*People v. Racinowski* (1979), 78 Ill. App. 3d 954, 397 N.E.2d 932.) Therefore, we find that the State did not have to seek an extended term for the trial court to impose one. We further note that the court did not summarily impose an extended sentence. It requested argument from counsel on the issue and defendant was not deprived of an opportunity to oppose the imposition.

Defendant also argues that evidence of pending charges was erroneously admitted. However, the trial court stated that it did not consider the charges in determining the sentence. Since the evidence was not considered, defendant's argument that it led the court to impose an extended term is without merit. See *People v. Poll* (1980), 81 Ill. 2d 286, 408 N.E.2d 212.

For the foregoing reasons, we affirm the judgments as to the murder and armed robbery convictions, and vacate the trial court's judgment as to the armed violence conviction and sentence.

Judgments affirmed in part, vacated in part.

GOLDBERG, P. J., and CAMPBELL, J., concur.