THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* POSIE JONES, a/k/a Posie Day, Defendant-Appellant.

First District (1st Division)    No. 79-2152

Opinion filed February 9, 1981.

James J. Doherty, Public Defender, of Chicago (Geraldine V. Biggs and Frances G. Sowa, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Pamela Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

After a bench trial, defendant, Posie Jones, was convicted of two counts of unlawful use of weapons, unlawful restraint, and armed violence and sentenced to a term of 14 years for armed violence and an

extended term of 9 years for unlawful use of weapons, the sentences to be served concurrently. On appeal, the defendant argues that: (1) the State failed to establish his guilt beyond a reasonable doubt; (2) he did not knowingly and understandingly waive his constitutional right to trial by jury; and (3) the trial court erred in entering a judgment of conviction for both unlawful restraint and armed violence and on both counts of unlawful use of weapons.

For the following reasons, we affirm in part and reverse in part.

The defendant was charged with six counts: unlawful use of weapons, unlawful use of weapons within five years of release from prison, unlawful restraint, armed violence predicated on the unlawful restraint, attempt armed robbery, and armed violence predicated on attempt armed robbery. The parties stipulated that the defendant was found guilty of rape on August 14, 1969, sentenced to a term of 15 to 30 years, and released from that sentence on September 29, 1978.

The complaining witness, Clara Porter, testified for the State that on October 23, 1978, at approximately 1 a.m. she was walking in the vicinity of 59th and Halsted in the City of Chicago. Ms. Porter testified that she had left her home to get something to eat and, upon finding that one restaurant was closed, decided to try a second restaurant in the neighborhood. As she was walking to the second restaurant, a man approached her from behind. He asked her "what would a lady like you be doing out on a night like this walking." At this point, Ms. Porter was in front of a blue building which was next to an abandoned gray building. There was a street light in front of the building according to the witness. She did not respond to the man's inquiry. The defendant then came up from behind her and grabbed her. He pulled a knife and told her not to scream or he would kill her. Ms. Porter next testified that the defendant began pulling her towards an abandoned building but she broke loose and ran to a nearby tavern in search of a police officer. She testified that from the time the defendant pulled a knife and the time she escaped approximately three to four seconds elapsed. When she did not find any help at the tavern she left. At this time she noticed her coat on the sidewalk near the site of her attack and decided to retrieve the coat as she didn't see anyone near it. She then ran to a gas station where a police car was parked. As she was telling the officers of the incident and giving them a description of her assailant, she spotted her assailant in an alley next to the gas station. According to Ms. Porter, when she pointed him out to the police officers, the defendant fled down an alley. He was apprehended a few minutes later by the police officers as he stood in an entranceway. After the arrest, the defendant told her in the presence of the officers that, if she would tell the officers that he was not her assailant, he would give her some money.

Ms. Porter made an in-court identification of the defendant and also identified a wood-handled knife as the one involved in the incident.

Chicago police officers William Wright and James Spratt corroborated Ms. Porter's testimony. Officer Wright testified that on October 23, 1978, at about 1:30 a.m. he and his partner, Officer Spratt, were parked at a gas station at 59th and Peoria when they were approached by Ms. Porter, who informed them that she had been attacked. She then gave the officers a description of the man who had attacked her. As she gave the officers the description, they saw a man fitting her description near the gas station. However, when Ms. Porter pointed him out, the man turned around and proceeded in the direction he had just come from. After following the man a short distance, the officers apprehended him and placed him under arrest. Upon searching him the officers recovered a wood-handled knife from the man's inside coat pocket. After the arrest, the defendant asked Ms. Porter to tell the officers that she had made a mistake and that in return he would give her anything she wanted. Officer Spratt reiterated his partner's testimony. Both officers identified the knife they recovered on that date and identified the defendant as the man they had arrested on that occasion. After this testimony the defendant's motion for a directed verdict was granted relative to the attempt armed robbery charge and the armed violence charge based on that count.

The defendant, Posie Jones, testified on his own behalf that on October 23, 1978, he was residing with his mother after being released from prison on September 29, 1978. While he was unemployed at this time, the defendant stated that he had several job prospects. He further testified that at about 1 a.m. on October 23, 1978, he left his mother's home to buy some beer at a tavern. Before he left for the tavern, he placed one of his mother's knives in his pocket for protection as he had been robbed recently. On the way to the tavern, he encountered Ms. Porter. According to his testimony she was staggering as she walked. She asked him if he would "like to have some fun tonight." The defendant interpreted this remark to be an offer for sex and because he was not interested he rejected her offer. When he tried to walk away, however, Ms. Porter persisted in her request and so he pushed her away and flashed his knife to frighten her. At this point, Ms. Porter ran across the street. The defendant did not otherwise touch or threaten her. Nor did her coat come off. After this confrontation, the defendant stated that he continued on his way but before he reached the tavern, which was his original destination, two police officers arrested him at gunpoint. When they searched him they recovered his knife. When the defendant asked why he was arrested, the officers stated that he had attacked Ms. Porter. The defendant then told Ms. Porter that she had approached him but she said he should not

have pulled the knife on her. The defendant denied offering to pay the complaining witness for dropping the charges. The court found the defendant guilty and after a sentencing hearing gave him concurrent 9- and 14-year sentences. The defendant filed a timely appeal.

The defendant urges that he was not proven guilty beyond a reasonable doubt because the testimony of the complaining witness lacked credibility in that it was implausible and contrary to human experience. The defendant points to the fact that the victim remained in the area of the crime instead of going home after the alleged attack, although she lived only two blocks away. Furthermore, the defendant notes that she didn't report her attack to anyone in the tavern which she visited immediately after the attack and only reported the attack to the police when she accidentally saw a squad car parked at a nearby gas station. The defendant also urges that the State failed to explain why, if the defendant committed a crime, he would remain in the area just waiting to be apprehended.

The credibility of a witness is for the trier of fact (*People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182; *People v. Flores* (1979), 79 Ill. App. 3d 869, 398 N.E.2d 1132), and a reviewing court should not disturb a conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313; *People v. Mingo* (1980), 89 Ill. App. 3d 285, 411 N.E.2d 968; *People v. Reed* (1980), 84 Ill. App. 3d 1030, 405 N.E.2d 1065.) It is quite clear in Illinois that the testimony of a single credible witness is sufficient to support a conviction. (*People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601; *People v. Novotny*; *People v. Mingo*; *People v. Flores*.) Here, the testimony of the complaining witness was clear and corroborated by the testimony of the police officers. It was further corroborated by the fact that a knife conforming to the complaining witness' description was found on the defendant when he was arrested shortly after the incident. While the complaining witness had not known the defendant, her identification of him such a short time after the incident further strengthens her identification. After reviewing the facts on appeal, we conclude that it was not inherently improbable for the complaining witness to seek out the police rather than telling someone at the tavern she went into immediately after the incident. Nor do we believe that the defendant's presence in the neighborhood after the incident raises any inferences that he was not guilty.

■■ The defendant also argues that the offense of unlawful use of weapons was not proven because, although he had a knife in his possession, he lacked the requisite intent to use the weapon unlawfully as required by law. (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(2).) We think that it is clear that if the court found the complaining witness' testimony

credible it could determine that the defendant possessed the requisite intent to use the weapon unlawfully. Intent can be inferred from the surrounding circumstances, including the words and actions of the defendant. *People v. Walker* (1976), 44 Ill. App. 3d 494, 358 N.E.2d 672; *People v. Uselding* (1969), 107 Ill. App. 2d 305, 247 N.E.2d 35.

■■ The defendant's last argument in this regard is that the unlawful restraint charge was not proven beyond a reasonable doubt because the evidence does not support a finding that he detained the complaining witness. Unlawful restraint, formerly known as false imprisonment, consists of the knowing confinement or detention of a person without sufficient legal authority. (Ill. Rev. Stat. 1977, ch. 38, par. 10—3; *People v. Satterthwaite* (1979), 72 Ill. App. 3d 483, 391 N.E.2d 162; *People v. Mulcahey* (1977), 50 Ill. App. 3d 421, 365 N.E.2d 1013.) Defendant's argument that no unlawful restraint occurred rests on his conclusion that because the complaining witness was only restrained for a few seconds there was no real confinement or detention as required by the statute. We do not agree. If a party is actually restrained without legal authority, the duration of the restraint, however short, is inconsequential. (35 C.J.S. 2d *False Imprisonment* §13 (1960).) We note that in *Satterthwaite*, while no direct issue was raised as to the shortness of the duration of the restraint, a conviction for unlawful restraint was affirmed despite defendant's reasonable doubt argument, where the complaining witness' freedom was only impaired for approximately two minutes. The defendant has referred us to no decision where an actual unauthorized restraint was found insufficient merely because the duration of the restraint was minimal. Nor has our research disclosed any such case. Accordingly, we find that the defendant was proven guilty of unlawful use of weapons and unlawful restraint beyond a reasonable doubt.

The defendant next contends that his convictions must be reversed because he did not make a knowing and understanding waiver of his right to trial by jury. Under section 103—6 of the Code of Criminal Procedure of 1963, every person accused of an offense has the right to a trial by jury unless understandingly waived by the defendant in open court. (Ill. Rev. Stat. 1977, ch. 38, par. 103—6.) The trial court has a duty to see that the defendant's waiver of his right to trial by jury is expressly and understandingly made in open court. (*People v. Clark* (1964), 30 Ill. 2d 216, 195 N.E.2d 631; *People v. Bristow* (1980), 80 Ill. App. 3d 535, 400 N.E.2d 511; *People v. Banks* (1979), 71 Ill. App. 3d 15, 389 N.E.2d 180.) There is no specific formula for determining whether a defendant's waiver of his right to a jury trial is understandingly made (*People v. Palmer* (1963), 27 Ill. 2d 311, 189 N.E.2d 265; *People v. Lewis* (1980), 89 Ill. App. 3d 840, 412 N.E.2d 565), and as such, this determination rests upon the particular facts of each case. *People v. Richardson* (1965), 32 Ill. 2d 497, 207 N.E.2d 453;

*People v. Lewis; People v. Stolfo* (1977), 46 Ill. App. 3d 616, 361 N.E.2d 101; *People v. Ruiz* (1976), 42 Ill. App. 3d 969, 356 N.E.2d 881.

In *Richardson* the defendant argued that his waiver was not understandingly made; however, a jury waiver form was included in the record, and both the common law record and a transcript indicated that the defendant was fully advised of his right to a jury trial, waived his right to same by his counsel, and signed the waiver form. In holding that the waiver was sufficient, the supreme court explained:

> "Merely because the court did not at length discuss the consequences of the jury waiver does not necessarily require a holding that the waiver was not understandingly made. [Citation.] While the trial court might well have dwelt at more length on this matter in complying with its duty to insure that the jury waiver was expressly and understandingly made [citation], we believe that this record indicates that defendant understandingly waived his right to trial by jury." (32 Ill. 2d 497, 500.)

The same result was recently reached in *Lewis*, where again the defendant's signed jury waiver form was a part of the record and a "memorandum of orders" (hereinafter the half-sheet) contained an entry stating that the defendant was advised and waived his right to a trial by jury and that the waiver was signed. The trial transcript's only reference to the defendant's waiver was a comment by the trial judge in the presence of defendant and defendant's counsel that, "Okay, now you are signing the Jury waiver, let's go." The court echoed the sentiments of the *Richardson* court that although the record could have more clearly shown that the defendant's waiver was understandingly made, it, however, declined to find that the waiver was not sufficient.

■■ In the instant case, a jury waiver signed by the defendant is included in the record and the half-sheet indicates that on January 10, 1979, the defendant signed a jury waiver. A later entry on the half-sheet made on January 16, 1979, provides, *inter alia*: "P.P. Deft. in cust. Plea of N/G(he) Deft advised of right to trial by jury Waiver signed * * *." Moreover, the trial transcript reveals that prior to trial the court stated in the presence of the defendant and his counsel that, "Mr. Jones has previously waived his right to trial by jury." Based upon *Richardson* and *Lewis* we find that the defendant understandingly waived his right to trial by jury. In so finding, we note that we have reviewed all the cases relied upon by the defendant for his position but fail to find them factually analogous to the instant case.

The defendant's final contention is that his convictions for unlawful restraint and unlawful use of weapons must be vacated. The unlawful use of weapons conviction (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(2)) must

be vacated, according to the defendant, because it is a lesser-included offense of unlawful use of weapons within five years of release from prison. (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(b).) As the State concedes this point in its brief, the conviction for unlawful use of weapons is hereby vacated. The defendant urges that his unlawful restraint conviction must also be vacated because: (1) the convictions for unlawful restraint and armed violence based on unlawful restraint both arose out of the same physical act; and (2) unlawful restraint is a lesser included offense of armed violence based on unlawful restraint. We find it unnecessary to reach the second issue because we find that both convictions are based on the same act.

It is well recognized in Illinois that, while multiple convictions and concurrent sentences may result from offenses which arise from separate and distinct acts if the offenses are also not lesser included offenses (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858; *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273; *People v. Higgins* (1979), 71 Ill. App. 3d 912, 390 N.E.2d 340), multiple convictions and concurrent sentences may not result from offenses which arise from a single act and, as such, a defendant can be convicted and sentenced only on the more serious offense. *People v. Adams* (1980), 91 Ill. App. 3d 1059, 415 N.E.2d 610; *People v. Lavoy* (1980), 91 Ill. App. 3d 639, 415 N.E.2d 487; *People v. Crawford* (1980), 90 Ill. App. 3d 888, 414 N.E.2d 25; *People v. Jones* (1980), 89 Ill. App. 3d 1030, 412 N.E.2d 709.

In *King*, the Illinois Supreme Court reaffirmed the necessity of the general rule to avoid the prejudice which results to a defendant where more than one offense is carved from the same physical act or where a defendant is convicted of multiple offenses arising from multiple acts but some of the offenses are, by definition, lesser included offenses. However, in an effort to reduce the inconsistencies rampant in this area of law, the court then held that the test which should be used in determining whether multiple convictions and concurrent sentences are permissible is whether the defendant's acts are "separate and distinct acts," not whether the defendant had an independent motivation for committing each offense. Prior to *King* both the "independent motivation" test and the "separate and distinct acts" test were utilized and had resulted in a number of inconsistent decisions.

In explaining the "separate and distinct acts" test, the court in *King* noted that the separate and distinct acts which would justify multiple convictions and concurrent sentences might be incidental or closely related acts and that offenses based on these separate acts would require

proof of different elements. Also instructive in discerning the distinction between one act and separate and distinct acts are several cases cited by *King* as examples of the application of the "separate and distinct acts" test. According to these cases attention should be focused upon: (1) whether the conduct which constitutes one offense is clearly divisible from the conduct which constitutes the other offense (*People v. Moore* (1972), 51 Ill. 2d 79, 281 N.E.2d 294, *cert. denied* (1972), 409 U.S. 979, 34 L. Ed. 2d 242, 93 S. Ct. 331; *People v. Porter* (1973), 13 Ill. App. 3d 893, 300 N.E.2d 814); (2) whether the same identical evidence is the basis for the finding of guilty of both charges (*People v. Raby* (1968), 40 Ill. 2d 392, 240 N.E.2d 595, *cert. denied* (1969), 393 U.S. 1083, 21 L. Ed. 2d 776, 89 S. Ct. 867); and (3) whether the one offense has a necessary connection with the other offense (*People v. Johnson* (1970), 44 Ill. 2d 463, 256 N.E.2d 343, *cert. denied* (1970), 400 U.S. 958, 27 L. Ed. 2d 266, 91 S. Ct. 356; *People v. Burks* (1975), 29 Ill. App. 3d 74, 331 N.E.2d 581). The court in *Johnson*, in explaining its holding that the two offenses at issue arose from separate and distinct acts because they had no necessary connection with each other, stated:

"These are separate and distinct crimes requiring entirely different proof to sustain them. The rape has no necessary connection with the burglary as is evident when we stop to consider that the burglary was complete before the defendants laid a hand on the victim. Had the defendants not embarked on an entirely separate course of conduct in making their sexual assault, the burglary would have occurred without any rape having been committed." 44 Ill. 2d 463, 475.

Several recent Illinois decisions have considered whether a conviction may be imposed for both armed violence and for the offense underlying the armed violence. (*People v. Adams* (1980), 91 Ill. App. 3d 1059, 415 N.E.2d 610; *People v. Lavoy* (1980), 91 Ill. App. 3d 639, 415 N.E.2d 487; *People v. Crawford* (1980), 90 Ill. App. 3d 888, 414 N.E.2d 25; *People v. Jones* (1980), 89 Ill. App. 3d 1030, 412 N.E.2d 709.) Each has held that, as armed violence is defined as the commission of a felony while armed with a dangerous weapon, the single act of committing the felony by the use of a dangerous weapon gives rise to both offenses. As such, in each case under the authority of *King*, the conviction and/or sentence of the lesser offense has been vacated. We follow this authority in the present case. It is clear that the defendant's act of unlawfully detaining the complaining witness with a knife gave rise to the offense of both unlawful restraint and armed violence based on the unlawful restraint. As such the conduct giving rise to one offense was not clearly divisible from the other and the same identical evidence serves as the basis for both offenses. Moreover,

we have determined that the armed violence offense, as a Class X felony, is more serious than the unlawful restraint offense which is a Class 4 felony; we find that the unlawful restraint conviction as the less serious offense must be vacated.

For the foregoing reasons, the judgments and sentences of the circuit court of Cook County in regards to armed violence and unlawful use of weapons within five years of release of prison are affirmed and the convictions for unlawful restraint and unlawful use of weapons are vacated.

Affirmed in part; reversed in part.

McGLOON and O'CONNOR, JJ., concur.