THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. QUENTIN HOLLOMAN, Defendant-Appellant.

Fourth District   No. 4—98—0500

Argued March 17, 1999.—Opinion filed April 15, 1999.—Rehearing denied May 7, 1999.

Daniel D. Yuhas and Timothy E. Hoerman (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In February 1998, a jury convicted defendant, Quentin Holloman, of possession of more than 30 grams but not more than 500 grams of cannabis with intent to deliver (720 ILCS 550/5(d) (West 1996)). The trial court later sentenced him to 10 years in prison and imposed a fine. Defendant appeals, claiming that (1) the court abused its discretion by admitting his prior felony conviction for impeachment

purposes; (2) the court committed reversible error when it admitted expert testimony consisting of "drug dealer profiles"; (3) the court relied on erroneous information at sentencing; and (4) he received ineffective assistance of his trial counsel. We affirm defendant's conviction but remand for a new sentencing hearing.

## I. BACKGROUND

Around 4 p.m. on August 23, 1997, Decatur police officer Frank Hubbard and two other officers went to 721 E. Johns Street in Decatur, Illinois, to conduct a follow-up investigation of a shooting incident. Hubbard and Officer Platzbecker went to the front door of the residence while Officer Michael Gannon went to the rear. When Hubbard knocked on the front door, it opened approximately 12 inches, and a young man, Antonio Harris, came to the door. According to Hubbard's testimony, when he began the interview, Harris acted "nervous" and repeatedly looked over his shoulder toward the inside of the house. After a few moments, Hubbard heard a commotion inside the house, and Gannon reported over his radio that persons were attempting to exit the residence through a rear window. At that point, Harris attempted to close the front door on Hubbard and Platzbecker. Hubbard, believing a felony was in progress, pulled Harris onto the front porch and entered the residence.

Inside, Hubbard found defendant lying on the floor in the back bedroom. Jimmy Brown was halfway out the window of the same room. Hubbard also found a large quantity of cannabis on and around a card table in the dining area. Following a standard procedure, Hubbard contacted Task Force X (the Decatur police drug task force) upon discovery of the drugs. He then took the occupants of the residence into custody and secured the residence. Task Force X obtained a warrant, searched the premises, and collected the evidence. Task Force officer Edward Root testified that the total amount of cannabis recovered at the house was 406.1 grams. Root also recovered a box of plastic bags and a pair of scissors. Sixty dollars in cash was found on the card table, and defendant was holding $347 in cash at the time of his arrest. Jimmy Brown was holding $350. Defendant's fingerprints were found on one of the plastic bags containing cannabis.

Officer Carl Carpenter testified that he interviewed defendant at the Macon County jail following his arrest. Defendant told Carpenter that he came to Decatur from Chicago with his cousin, Jimmy Brown, to sell drugs out of the Johns Street house. This arrangement was made at the request of a Chicago man known as "Tray," who transported defendant and Brown to Decatur and dropped them off at the Johns Street house. An individual unknown to defendant dropped

off the drugs (about one-half pound of cannabis) and other supplies later that night. At trial, defendant denied having told Carpenter this version of events.

Defendant testified that he came to Decatur from Chicago with Brown for a vacation. He initially stayed at a motel, but checked out after an altercation with the management over a $10 raise in the rates. At some point prior to the events surrounding his arrest at the Johns Street house, defendant bought some "weed" at the house and subsequently was picked up by the police. After posting bond he returned to the house and asked if he could sleep there for a couple of hours because he had nowhere else to go. The young man at the house agreed. Defendant smoked a little, moved some things out of the way, and went to sleep on the floor in the back bedroom. According to defendant, he slept until he was awakened by Hubbard.

Gannon testified that he saw defendant by the window as Brown was attempting to climb out. By the time Gannon reached the window (where he handcuffed Brown), defendant had retreated back into the house and out of Gannon's sight.

When the State in rebuttal sought to impeach defendant's testimony with a 1996 felony conviction for possession of a controlled substance with intent to deliver, the trial court conducted a side-bar conference out of the jury's presence. (The record contains no transcript or bystander's report of the side-bar.) After the side-bar, the court addressed the jury as follows:

> "Ladies and gentlemen, the only evidence in, uh, rebuttal by the State is a certified copy of conviction, uh, of a case in Macon County. It is entitled The People of the State of Illinois vs. Quentin Holloman, [No.] 96—CF—681, and the record indicates that on August the 16th of 1996, Quentin Holloman was convicted of a felony in Macon County.
>
> You can use that evidence in determining his credibility only. It is not to be used for any other purpose."

Later, also out of the jury's presence, the trial court gave defendant an opportunity to state on the record his objection to the conviction's admission. Defendant asserted that its prejudicial effect outweighed any probative value. The court stated in response that it had overruled the objection and had weighed the prejudicial effect against the probative value when the court made its determination and that, because the prior conviction was for the same offense as currently charged, the "mere fact" approach was used. The court later clarified its ruling for fear that it originally misstated the standard. The court stated as follows:

> "[J]ust to make sure that so there is no problem in the record, uh,

that the probative value of the impeachment evidence was—I made that determination that it was not outweighed by the undue prejudice that could be caused to the defendant. I think I might have said it backwards."

The jury then convicted defendant and the trial court subsequently sentenced him as previously stated. This appeal followed.

## II. ANALYSIS

### A. Impeachment Evidence

Defendant first argues that the trial court abused its discretion when it admitted his prior felony conviction for impeachment purposes. Specifically, he alleges that the court supplanted the balancing test required under *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971), with the "mere fact" method of impeachment, thereby depriving him of the benefit of a meaningful *Montgomery* analysis.

■ A trial court's decision to allow impeachment by a prior conviction should not be reversed absent an abuse of discretion. *People v. McKibbins*, 96 Ill. 2d 176, 187-88, 449 N.E.2d 821, 826 (1983). Under *Montgomery*, a prior conviction is admissible to impeach a testifying defendant if (1) the conviction was for a crime punishable by death or imprisonment for more than one year (a felony); or (2) the conviction was for a crime involving dishonesty or false statement. In either case, the prior conviction is not admissible if (a) it is more than 10 years old, or (b) the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698; see also *People v. Williams*, 173 Ill. 2d 48, 83, 670 N.E.2d 638, 655 (1996) (asserting continued adherence to the *Montgomery* standard).

■ The "mere fact" method of impeachment was first suggested in *People v. Kunze*, 193 Ill. App. 3d 708, 731, 550 N.E.2d 284, 299 (1990) (Steigmann, J., specially concurring). Under this method, only the existence of the prior conviction is revealed to the jury, not its underlying nature. Use of the "mere fact" method reduces the risk of prejudice to the defendant, especially when the prior conviction was for the same or a similar offense as the current charge.

■ In *People v. Atkinson*, 288 Ill. App. 3d 102, 105-07, 679 N.E.2d 1266, 1268-69 (1997), this court clarified the way in which trial courts should conduct the *Montgomery* analysis in conjunction with the option of using the "mere fact" method. A trial court should first determine if the prior conviction falls within the two categories of permissible convictions and meets the timeliness requirement. If these two "mechanical prongs" of the *Montgomery* test are satisfied, the

court should then conduct the balancing test. *Atkinson*, 288 Ill. App. 3d at 106-07, 679 N.E.2d at 1269. "In determining whether the probative value of the evidence sought to be admitted is substantially outweighed by the danger of unfair prejudice, the court should consider evidentiary alternatives," one of which is the "mere fact" method of impeachment. *Atkinson*, 288 Ill. App. 3d at 107, 679 N.E.2d at 1269.

■ In this case, the trial court properly followed *Atkinson*. Defendant's prior conviction satisfied the mechanical prongs of *Montgomery*—that is, it was a felony conviction from 1996. The record shows that the court weighed the probative value of admitting the prior conviction against the possibility of unfair prejudice, and in doing so properly exercised its discretion. The court stated that it performed the balancing test and that because the prior conviction was for the same offense as currently charged, the court opted to allow only the "mere fact" method of impeachment.

In so concluding, we emphasize that a trial court's use of the "mere fact" method of impeachment by prior conviction does not mean that the court may refrain from engaging in the balancing test *Montgomery* requires. Even though use of the "mere fact" method will (in most cases) substantially *reduce* the prejudicial effect a defendant might suffer by being impeached with a prior conviction—that is, as compared to the prejudice he might suffer by having the nature of the felony conviction revealed to the jury—use of the "mere fact" method does not *eliminate* that prejudicial effect.

For example, consider a case in which a defendant on trial for armed robbery presents an alibi that he was at his aunt's birthday party at the time of the armed robbery. Defendant testifies to his presence at the birthday party, as do three other witnesses who claim to have been at the party with defendant. In rebuttal, if the State seeks to impeach the defendant by bringing forth his two prior burglary convictions, it would be entirely appropriate for the trial court to conclude that—even though it would use the "mere fact" method if it were to grant the State's request—on balance, the probative value of the defendant's prior convictions is substantially outweighed by the danger of unfair prejudice he would suffer. That is, because the defendant is but one of four alibi witnesses presented by the defense, the State does not really need to impeach his testimony by throwing doubt upon his credibility by means of his prior felony convictions. Thus, in this example, even though the use of the "mere fact" method would reduce the *extent* of the prejudice the defendant might suffer, the trial court may nonetheless determine that because the probative value of the impeaching evidence is so slight, the minimal probative value is

substantially outweighed by the prejudicial effect. In other words, casting doubt upon the defendant's credibility does little to defeat the alibi defense because the defendant's testimony is corroborated by three other witnesses, none of whom are impeached by the *defendant's* prior conviction.

In this case, defendant essentially contends that a trial court presented with the State's request to impeach a defendant with his prior conviction must utilize the *Montgomery* balancing test and decide to allow the impeachment by prior conviction *before* the court determines whether it will allow only the "mere fact" method of impeachment. In support of this contention, defendant cites a portion of the specially concurring opinion in *Kunze*, which states that use of the "mere fact" method is appropriate only after "the trial court has determined that such evidence is admissible for that purpose under the *Montgomery* standards." *Kunze*, 193 Ill. App. 3d at 731, 550 N.E.2d at 299 (Steigmann, J., specially concurring). However, defendant has misconstrued that specially concurring opinion, and his argument is groundless.

When a trial court assesses the admissibility of a defendant's prior conviction for impeachment purposes, *Montgomery* requires it to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698. To properly apply this standard, the court must consider the evidence that the jury *will actually receive*. The court's determination is not some academic exercise but instead a real-world balancing of probative value versus unfair prejudice. Trial courts routinely engage in such balancings in a multitude of contexts (see *People v. Lewis*, 165 Ill. 2d 305, 329, 651 N.E.2d 72, 83, (1995) ("even when evidence is relevant, it may, in the trial court's discretion, be excluded if its prejudicial effect substantially outweighs its probative value"); *People v. Rodriguez*, 291 Ill. App. 3d 55, 65, 684 N.E.2d 128, 134 (1997) (court may reject evidence due to its possibly unfair prejudicial nature)), and their doing so makes sense only when balancing the actual evidence at issue.

Stripped of its rhetoric, defendant's proposed approach would require trial courts in cases such as this one to determine whether the probative value of a defendant's prior conviction for the same drug offense is substantially outweighed by the danger of the unfair prejudice he would suffer, *even though the trial court has no intention of ever letting the jury learn that defendant's prior conviction was for the same offense*. However, including in this evidentiary balancing process a fact which will never be admitted makes no sense. Thus, we reject defendant's argument.

In performing the balancing test, the trial court must consider the

evidence that will actually be presented to, and considered by, the jury. Therefore, if "mere fact" impeachment will be used, that is what the court must consider. That is what the court did here and, in so doing, it properly exercised its discretion.

## B. Expert Testimony

■ Defendant next argues that the trial court committed reversible error when it admitted expert testimony about "drug dealer profiles." Specifically, defendant claims that the testimony of Officer Root on how cannabis is transported into Macon County, what form it comes in, and the typical characteristics of a "drug house" had slight bearing, if any, on his guilt or innocence on a charge of possession with intent to deliver.

Defendant failed to properly preserve this issue for review by failing to raise it in his posttrial motion. *People v. Cloutier*, 156 Ill. 2d 483, 507, 622 N.E.2d 774, 786 (1993). Thus, defendant has forfeited this issue on appeal unless the plain error rule applies, which occurs when the evidence is closely balanced or the error is of such magnitude the defendant has been denied a fair trial. *Cloutier*, 156 Ill. 2d at 507, 622 N.E.2d at 786. We conclude that the error alleged here does not rise to the level of plain error, which requires that the asserted error affect "something 'fundamental to the integrity of the judicial process.' " *People v. Keene*, 169 Ill. 2d 1, 17, 660 N.E.2d 901, 910 (1995), quoting *People v. Green*, 74 Ill. 2d 444, 456, 386 N.E.2d 272, 278 (1979) (Ryan, J., specially concurring).

Root's testimony was elicited to prove that defendant had intent to deliver, an element of the charged offense. While some of Root's testimony may have been irrelevant, none of it was so prejudicial that its admission amounts to plain error. The evidence in this case was not closely balanced, and the admission of the evidence in question did not deny defendant fundamental fairness.

Although we have concluded that defendant has forfeited on appeal the issue of expert testimony regarding "drug-dealer profiles," we nonetheless caution trial courts that such evidence must be seriously scrutinized and handled with care. In a proper case, expert testimony by a police officer about how controlled substances are manufactured or packaged might be "highly relevant," particularly if an issue in the case is whether the defendant possessed the controlled substances in question merely for his personal use, as opposed to his possession with an intent to deliver. See *People v. Moore*, 294 Ill. App. 3d 410, 418, 689 N.E.2d 1181, 1186 (1998). However, in its potentially prejudicial effect, this evidence is similar to expert testimony by a police officer about how street gangs operate. As the supreme court has noted, because a

"strong prejudice" may exist against street gangs, evidence indicating that a defendant was a gang member or involved in gang-related activity may be admissible only "where there is sufficient proof that membership or [gang] activity is related to the crime charged." *People v. Patterson*, 154 Ill. 2d 414, 458, 610 N.E.2d 16, 36 (1992).

## C. Sentencing

■ Defendant next argues that he is entitled to a new sentencing hearing because the trial court considered erroneous information contained in the presentence report. The presentence report listed defendant's 1996 conviction for possession with intent to deliver as "cont. sub. trafficking." However, defendant has never been convicted of controlled substance trafficking. Nonetheless, in apparent reliance upon the presentence report, the court referred to this conviction at defendant's sentencing hearing when it stated the following:

> "[T]here are three prior felony convictions, two of them are drug charges. *The last was a controlled substance trafficking charge* [for] which he received three years [in prison], and I assume that he just got off parole when this was committed because it shows that he was not on parole at the time.
>
> I happen to agree with [the prosecutor] that if we are ever going to rid drugs out of this community or any other community we are going to take the dealers off the street for as long as I possibly can to keep the individual himself from dealing and to hopefully send a message that drug dealers are going to go away for as long as they can go away in this community. Quite frankly, [defendant], if you want to sell drugs, do it up in Cook County but don't do it here." (Emphasis added.)

The State argues that the misrepresentation in the presentence report was immaterial because the trial judge's primary point was that defendant was a dealer, and not just a user, of illegal drugs and that had his prior conviction been accurately listed, the court would have reached the same conclusion. Although the State would have us speculate that this is so, we *know* the court noted defendant's three prior convictions and specifically referred to the erroneous "trafficking" conviction. In light of this record, we cannot conclude that the trial court's consideration of the trafficking conviction was insignificant. Because we agree with defendant that he is entitled to a new sentencing hearing with an accurate record, we vacate his sentence and remand for a new sentencing hearing.

## D. Ineffective Assistance of Counsel

■ Last, defendant argues that ineffective assistance of counsel deprived him of a fair trial. Ineffective assistance of counsel claims are

reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Reversal under *Strickland* requires defendant to prove that (1) the conduct of trial counsel fell below an objective standard of reasonableness (*Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064); and (2) the deficient performance prejudiced the defendant such that a "reasonable probability" exists that the result would have been different but for the deficient performance (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068). If it is easier to dispose of a claim for lack of sufficient prejudice accruing to defendant, that course should be taken. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

Defendant's primary contention is that his attorney was ineffective because he failed to move to suppress the evidence arising from defendant's arrest. Defendant maintains that such a motion was his best "and possibly only" defense, and that such a motion would have been "patently meritorious" because his fourth amendment rights were violated by the warrantless search and arrest. The State contends that defendant lacks standing under the fourth amendment and disputes whether defendant's fourth amendment claim is truly "meritorious," noting that because defendant's arrest was not challenged at trial, the State had no need or opportunity to present evidence on the propriety of the police officers' conduct.

In *Kunze*, 193 Ill. App. 3d at 726, 550 N.E.2d at 296, this court held that adjudication of a claim of ineffective assistance of counsel is often better made in proceedings on a petition for postconviction relief, where a complete record can be made. In *Kunze*, the ineffective assistance of counsel claim turned on whether the defendant would have testified had he known in advance that the State would use his prior convictions to impeach him. *Kunze*, 193 Ill. App. 3d at 725, 550 N.E.2d at 296. Because nothing in the record permitted such a determination to be made, this court declined to adjudicate defendant's claim. *Kunze*, 193 Ill. App. 3d at 726, 550 N.E.2d at 296.

Likewise, in this case, whether defendant suffered prejudice for counsel's failure to make the suggested motions depends on the likelihood of their success. As the State points out, the record is devoid of factual findings on the issues pertinent to defendant's claim. The record contains nothing to review with respect to either the appropriateness of the officer's actions or defendant's standing to raise fourth amendment issues. We therefore decline the opportunity to consider these questions. Rather, defendant may pursue his claim under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1996)). *People v. Flores*, 231 Ill. App. 3d 813, 827-28, 596 N.E.2d 1204, 1213-14

(1992) (held, without an explanation from trial counsel, reviewing court cannot determine whether trial counsel's omissions involved the exercise of judgment, discretion, or trial tactics, which are not reviewable matters; recommended postconviction petition as a better forum for adjudication of ineffective assistance claim); *People v. Palacio*, 240 Ill. App. 3d 1078, 1087, 607 N.E.2d 1375, 1380 (1993) (held, "[t]he appellate court is not the appropriate forum to decide contested questions of fact," and defendant could pursue his claim pursuant to the Post-Conviction Hearing Act, under which the court could hear evidence and make appropriate findings); *In re Carmody*, 274 Ill. App. 3d 46, 56, 653 N.E.2d 977, 984 (1995) (noting that the record on direct appeal of a criminal case rarely contains any explanation of the tactics of trial counsel, and holding that if those tactics are to be the subject of scrutiny, a record should be developed in which they can effectively be reviewed); *Kunze*, 193 Ill. App. 3d at 725-26, 550 N.E.2d at 296 ("[w]here *** consideration of matters outside of the record is required in order to adjudicate the issues presented for review, the defendant's contentions are more appropriately addressed in proceedings on a petition for post-conviction relief").

Defendant also claims that trial counsel was ineffective for failing to move to dismiss count II, possession with a prior possession conviction. 720 ILCS 550/4(d) (West 1996). Because count II was vacated at sentencing, defendant cannot make the necessary showing of prejudice under *Strickland*, *i.e.*, that he was so prejudiced by counsel's omission that a different result was "reasonably probable." See *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. Defendant could not have obtained a more favorable result.

In light of our decision to grant defendant a new sentencing hearing, we need not address defendant's argument regarding his counsel's failure to correct the error on the presentence report. We similarly need not address his argument that he is entitled to a credit of $10 against the imposed fines, representing $5 for each day he was incarcerated before being released on bond (725 ILCS 5/110—14 (West 1996)), even though the State concedes that defendant is entitled to a credit of $10 against either the street-value fine or the drug-treatment assessment, but not both under *People v. Sinnott*, 226 Ill. App. 3d 923, 936, 590 N.E.2d 502, 511 (1992).

## III. CONCLUSION

For the reasons stated, we affirm defendant's conviction and remand for resentencing.

Affirmed in part and vacated in part; cause remanded.

GARMAN and MYERSCOUGH, JJ., concur.