THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAWRENCE C. DIXON, Defendant-Appellant.

Fourth District No. 4—98—1007

Opinion filed November 23, 1999.—Rehearing denied January 4, 2000.

MYERSCOUGH, J., dissenting.

Daniel D. Yuhas and Catherine K. Hart, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In November 1998, a jury convicted defendant, Lawrence C. Dixon, of burglary and theft of property having a value less than $300 (720 ILCS 5/19—1(a), 16—1(a)(1)(A) (West 1996)), and he was later sentenced to 10 years in prison. Defendant appeals, arguing that (1) Public Act 89—689 (Pub. Act 89—689, § 90, eff. December 31, 1996 (1996 Ill. Laws 3775, 3792-93)), which amended section 104—21(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104—21(a) (West 1994)) to eliminate the requirement that a defendant on psychotropic medication automatically receive a fitness hearing, is unconstitutional because it violates the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)); and (2) the trial court committed plain error by allowing the State to impeach defendant by admitting in evidence the "mere fact" of his prior felony convictions. We affirm.

## I. BACKGROUND

The evidence at defendant's trial showed the following. Around midnight on August 5, 1998, Brian Huhnke and Josh Monterastilli, two employees of Stanley Steemer's carpet cleaning service, were cleaning Buster's restaurant in Pontiac, Illinois. When they were almost finished, they went out to a van parked about 10 feet from the front entrance to do some paperwork. Huhnke and Monterastilli used a metal box with a clipboard writing surface on top. The box contained

the keys to Buster's, a calculator, some Stanley Steamer documents, a pack of cigarettes, a lighter, and a pen. Approximately 15 to 20 feet from the van, a man walked by and said "Hey, what's up," then continued on his way. Huhnke and Monterastilli did not see the man very well. They left the box on the passenger seat of the unlocked van and went back inside Buster's to close up. About five minutes later they returned, discovered that the box was gone, and called police. Huhnke found a Stanley Steamer log sheet by a nearby Dumpster.

Officer Bradley Woolford and two other officers responded. The two other officers made inquiries at the Super 8 motel located behind Buster's and then radioed Woolford to meet them at Room 125 of that motel. Woolford brought Huhnke and Monterastilli with him. When Woolford arrived, the two other officers, defendant, Lisa Brown (his friend), and Brown's baby were already at the room.

Huhnke told Woolford that defendant fit the description of the man who had walked past the van, and defendant admitted that he had done so. Defendant consented to a search of the room, and the officers found the box and all of its contents, except the cigarette lighter. Woolford testified that defendant's demeanor during the search bordered on "overly cooperative." Less than 30 minutes had elapsed between the discovery that the box was missing and the search of defendant's motel room.

Defendant told the officers that the items they found belonged to his roommate, Glen Sharp, and that he had not seen Sharp for several days. Defendant also offered to pay for any missing items.

Sharp testified that he left Pontiac between noon and 2 p.m. on August 5, for Pekin, Illinois, and did not return until August 7, 1998.

Outside the jury's presence, the prosecutor sought a ruling on whether the trial court would permit the State to use defendant's prior burglary convictions to impeach him in the event defendant testified. Those prior convictions occurred in 1991, 1992, 1993, and 1995. Defense counsel argued that the nature of the felonies was not relevant to defendant's credibility and that revealing it to the jury would be more prejudicial than probative. The court ruled as follows:

> "The court finds to admit the evidence of prior burglaries would have a prejudicial effect that would outweigh any value of impeachment. And so the State will be restricted to inquiring into whether or not the defendant has prior felonies. And the State can use the plural of that."

Defendant testified, and during his direct testimony his attorney asked the following question: "Now, you have suffered several felony convictions, prior in your life, have you not?" Defendant answered, "Yes."

Defendant testified that in August 1998 he was living temporarily

at the Super 8 motel and working for Caterpillar. On the night in question, he had gone out to get milk and was on his way back to his room when he passed the Stanley Steamer van and greeted Huhnke and Monterastilli. After that, he ran into a couple of his coworkers— backing a truck out of the parking lot—who happened to have a bag of his laundry. When he returned to his room and opened the laundry bag, he discovered the box inside. He later told the police he had not seen any of his coworkers for a couple of hours because he thought that they were looking for stolen goods and he wanted to cover for his friends.

During cross-examination, the State did not bring up defendant's prior convictions. During closing argument, the prosecutor once referred to the defendant's "background" and told the jury that his prior felonies could be considered only as evidence of his believability as a witness.

Defendant was convicted, and the trial court ordered a presentence investigation. Before this court, defendant asserts that the presentence investigation report indicated that defendant was taking Amitriptyline, an antidepressant, "while incarcerated at Livingston County." However, the presentence investigation is not included with the record on appeal. The court sentenced defendant, and this appeal followed.

## II. ANALYSIS

### A. Defendant's Single Subject Rule Challenge

Defendant first argues that because the trial court knew at the sentencing hearing that he was taking a psychotropic drug, the court was statutorily required to have a hearing on his fitness to stand trial. Although he acknowledges that Public Act 89—689 purportedly repealed this statutory requirement, he contends that the repeal was of no effect because Public Act 89—689 violates the single subject rule of the Illinois Constitution and is therefore void. We disagree.

Before Public Act 89—689 took effect, section 104—21(a) of the Code entitled a defendant on psychotropic medication to a fitness hearing before trial and sentencing. 725 ILCS 5/104—21(a) (West 1994); see *People v. Kinkead*, 168 Ill. 2d 394, 407-08, 660 N.E.2d 852, 858 (1995). At that time, section 104—21(a) read, in pertinent part, as follows: "A defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication." 725 ILCS 5/104—21(a) (West 1994). Public Act 89—689 amended section 104—21(a), so that it now reads: "A defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications." 725 ILCS 5/104—21(a) (West 1996).

(We note, for the purpose of providing an accurate history, that a prior amendment to section 104—21, which added the language, "no hearing is required unless the court finds there is a bona fide doubt of the defendant's fitness," was invalidated when the supreme court in *Johnson v. Edgar*, 176 Ill. 2d 499, 680 N.E.2d 1372 (1997), held Public Act 89—428 (Pub. Act 89—428, eff. December 13, 1995 (1995 Ill. Laws 4453)) unconstitutional for violating the single subject rule.)

■ The constitutionality of a statute is a question of law subject to *de novo* review. *People v. Fisher*, 184 Ill. 2d 441, 448, 705 N.E.2d 67, 71-72 (1998). All statutes are presumed to be constitutional, and the burden of rebutting that presumption is on the challenger, who must clearly establish a constitutional violation. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 351 (1999). Defendant contends that Public Act 89—689 violates the single subject rule because (1) several of its provisions have no natural and logical connection to each other; and (2) some of its provisions are not sufficiently related to a single subject, namely, "crimes and corrections—in relation to public safety." We disagree.

■ The single subject rule states: "Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." Ill. Const. 1970, art. IV, § 8(d). The rule is liberally construed in favor of upholding legislation, and the term "subject" is comprehensive in its scope and may be as broad as the legislature chooses. *Arangold*, 187 Ill. 2d at 352. The single subject rule (1) serves to prevent enactment of legislation that, standing on its own, could not garner the votes necessary for passage; (2) facilitates enactment of bills through a legislative process that is orderly and informed; and (3) promotes direct confrontation and informed discussion of legislative issues submitted for enactment. *People v. Reedy*, 186 Ill. 2d 1, 13-14, 708 N.E.2d 1114, 1119-20 (1999). The single subject rule does not "impose an onerous restriction" on the legislature, and the legislature must "go very far" across the line to violate the rule. *Johnson*, 176 Ill. 2d at 515-16, 680 N.E.2d at 1379-80.

### 1. *The Provisions of Public Act 89—689 and Their Relationship to Each Other*

■ Defendant first contends that Public Act 89—689 violates the single subject rule because several of its provisions have no natural and logical connection to each other. See *Johnson*, 176 Ill. 2d at 515, 680 N.E.2d at 1379. However, we need not address defendant's contention in light of the most recent decision of the Supreme Court of Illinois concerning the single subject rule, in which the court expressly rejected the argument that all the provisions of an act must have a logical and natural connection to each other. The supreme court held

that the only natural and logical connection required is one between the individual provisions of the Act and its subject. *Arangold*, 187 Ill. 2d at 352.

## 2. *The Provisions of Public Act 89—689 and Their Relationship to a Single Subject*

Defendant next contends that Public Act 89—689 violates the single subject rule because some of its provisions do not have a natural and logical connection to the subject of the Act. The State responds that all of the Act's provisions pertain to the criminal justice system. We agree with the State.

■ The title of Public Act 89—689 is "An Act in relation to public safety." Pub. Act 89—689, eff. December 31, 1996 (1996 Ill. Laws 3775). Citing *Johnson*, 176 Ill. 2d at 517-18, 680 N.E.2d at 1380-81, defendant contends that "public safety" is not a permissible subject under which disparate legislative provisions can be unified. In *Johnson*, our supreme court held that the "obviously discordant provisions" of Public Act 89—428 were not "related" based on "a tortured connection to a vague notion of public safety." *Johnson*, 176 Ill. 2d at 517-18, 680 N.E.2d at 1381. However, "[w]hen the supreme court in *Johnson* spoke of the term 'subject' in the context of the single subject rule, that court meant the substance of the legislative enactment at issue, which is contained within the body of the act, namely, the sections thereof." *People v. Pitts*, 295 Ill. App. 3d 182, 189-90, 691 N.E.2d 1174, 1179 (1998). When the body of a bill and its respective sections are not discordant and fall under a single subject, a broad title does not render the act unconstitutional. Put another way, if the title of an act is unconnected to anything that follows, the act might violate the rule and, thus, be unconstitutional; however, a broad title does not trump an otherwise valid act by being unduly broad. As this court wrote in *Pitts*, "[a]lthough the title of an act should be considered in an analysis of whether it violates the single subject rule[,] *** the title cannot be dispositive." *Pitts*, 295 Ill. App. 3d at 189, 691 N.E.2d at 1179.

We conclude that Public Act 89—689 addresses the single subject of the criminal justice system, and as such encompasses the substantive criminal law as well as the administration of the criminal justice system. The "administration of the criminal justice system" includes criminal procedure, law enforcement, the Illinois Department of Corrections (DOC), the juvenile court system, and matters of criminal court administration. All 19 sections of Public Act 89—689 comply with the single subject rule in that they all concern the criminal law or the administration of criminal justice, as we have defined that term.

Seven sections of Public Act 89—689 amend the Unified Code of Corrections (730 ILCS 5/1—1—1 *et seq.* (West 1994 & Supp. 1995)): section 20 concerns unclaimed funds and property of persons who have been committed to DOC (Pub. Act 89—689, § 20, eff. December 31, 1996 (1996 Ill. Laws at 3776-77) (amending 730 ILCS 5/3—4—3 (West 1994))); sections 65 and 115 address factors to be considered in aggravation during sentencing (Pub. Act 89—689, §§ 65, 115, eff. December 31, 1996 (1996 Ill. Laws at 3780-83, 3800-02) (amending 730 ILCS 5/5—5—3.2 (West Supp. 1995))); section 100 concerns parole eligibility requirements and restitution (Pub. Act 89—689, § 100, eff. December 31, 1996 (1996 Ill. Laws at 3793-98) (amending 730 ILCS 5/3—3—5 (West 1994); 730 ILCS 5/5—5—6 (West Supp. 1995))); section 125 concerns tracking and reporting gang activity among individuals within the criminal justice system (Pub. Act 89—689, § 125, eff. December 31, 1996 (1996 Ill. Laws 3803-08) (amending 730 ILCS 5/3—2—2 (West Supp. 1995); 730 ILCS 5/3—5—1 (West 1994))); section 130 concerns truth-in-sentencing provisions (Pub. Act 89—689, § 130, eff. December 31, 1996 (1996 Ill. Laws at 3808-09) (amending 730 ILCS 5/3—6—3.1 (West Supp. 1995))); and section 135 directs DOC to prohibit the use of curtains or other matter to obstruct the line of vision into prison cells (Pub. Act 89—689, § 135, eff. December 31, 1996 (1996 Ill. Laws at 3809-10) (amending 730 ILCS 5/3—7—2 (West 1994))).

Three sections of Public Act 89—689 amend the Criminal Code of 1961 (720 ILCS 5/1—1 *et seq.* (West 1994 & Supp. 1995)): section 5 relates to the crimes of escape and aiding escape (Pub. Act 89—689, § 5, eff. December 31, 1996 (1996 Ill. Laws at 3775-76) (amending 720 ILCS 5/31—6, 31—7 (West 1994))); section 110 changes the definition of a hate crime (Pub. Act 89—689, § 110, eff. December 31, 1996 (1996 Ill. Laws at 3799) (amending 720 ILCS 5/12—7.1 (West 1994))); and section 120 provides for an increased penalty for solicitation of murder when the person solicited is under the age of 17 (Pub. Act 89—689, § 120, eff. December 31, 1996 (1996 Ill. Laws at 3802-03) (amending 720 ILCS 5/8—1.1 (West 1994))).

Two sections of Public Act 89—689 amend the Code (725 ILCS 5/100—1 *et seq.* (West 1994 & Supp. 1995)): section 90, the section at issue in this case, concerns a defendant's fitness to stand trial when he or she is receiving psychotropic medication (Pub. Act 89—689, § 90, eff. December 31, 1996 (1996 Ill. Laws at 3792) (amending 725 ILCS 5/104—21 (West 1994))); and section 105 establishes an exception to the rule against the admission of hearsay evidence (Pub. Act 89—689, § 105, eff. December 31, 1996 (1996 Ill. Laws at 3798-99) (adding 725 ILCS 5/115—10.2 (West 1996))).

Two sections of Public Act 89—689 address the juvenile justice system: section 75 amends a Counties Code (55 ILCS 5/1—1001 *et seq.* (West 1994 & Supp. 1995)) provision dealing with the county juvenile impact incarceration program (Pub. Act 89—689, § 75, eff. December 31, 1996 (1996 Ill. Laws at 3784-86) (amending 55 ILCS 5/3—6038 (West Supp. 1995) and renumbering it as section 3—6039)); and section 80 amends the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1994 & Supp. 1995)) concerning types of dispositional orders (Pub. Act 89—689, § 80, eff. December 31, 1996 (1996 Ill. Laws at 3786-89) (amending 705 ILCS 405/5—23 (West Supp. 1995))).

Section 85 of Public Act 89—689 amends the Criminal Identification Act (20 ILCS 2630/0.01 through 10 (West 1994)) and identifies records that shall not be expunged (Pub. Act 89—689, § 85, eff. December 31, 1996 (1996 Ill. Laws at 3789-92) (amending 20 ILCS 2630/5 (West 1994))).

While the remaining sections of Public Act 89—689 do not amend criminal codes, they nevertheless relate to either the creation or enforcement of criminal laws. Section 55 amends the Humane Care for Animals Act (510 ILCS 70/1 through 16 (West 1994)) by making it a crime to injure a guide dog (Pub. Act 89—689, § 55, eff. December 31, 1996 (1996 Ill. Laws at 3778-80) (adding 510 ILCS 70/7.15 (West 1996) and amending 510 ILCS 70/16 (West 1994))); section 70 amends the Illinois Vehicle Code (625 ILCS 5/1—100 *et seq.* (West 1994 & Supp. 1995)) and establishes immunity for individuals who collect blood or urine for evidentiary purposes at the request of a law enforcement officer (Pub. Act 89—689, § 70, eff. December 31, 1996 (1996 Ill. Laws at 3783-84) (adding 625 ILCS 5/11—500.1 (West 1996))); section 35 amends that section of the Court of Claims Act (705 ILCS 505/1 through 29 (West 1994 & Supp. 1995)) concerning claims against the State for time unjustly served in prison (Pub. Act 89—689, § 35, eff. December 31, 1996 (1996 Ill. Laws at 3777-78) (705 ILCS 505/8 (West Supp. 1995))); and section 95 amends the State Appellate Defender Act (725 ILCS 105/1 through 11 (West 1994)) to address the backlog of indigent criminal appeals (Pub. Act 89—689, § 95, eff. December 31, 1996 (1996 Ill. Laws at 3793) (adding 725 ILCS 105/10.5 (West 1996))).

We hold that all the provisions of Public Act 89—689 are related to the criminal justice system. "The single[ ]subject rule is not a limitation on the comprehensiveness of a subject, which may be as broad as the legislature chooses," and a statute may include "all matters not inconsistent with, or foreign to, the general subject of the act." *People v. Dunigan*, 165 Ill. 2d 235, 255, 650 N.E.2d 1026, 1035 (1995).

## B. Defendant's Claim that the Trial Court's Use of the "Mere-Fact" Impeachment Method Was Plain Error

Last, defendant argues that, in light of *People v. Atkinson*, 186 Ill. 2d 450, 458, 713 N.E.2d 532, 536 (1999), the trial court committed plain error when it considered admitting the "mere fact" of his prior convictions for impeachment purposes and thereby improperly altered the *Montgomery* balancing test (*People v. Montgomery*, 47 Ill. 2d 510, 516, 268 N.E.2d 695, 698 (1971)). We disagree.

■ A trial court's decision to allow impeachment by a prior conviction should not be reversed absent an abuse of discretion. See *People v. McKibbins*, 96 Ill. 2d 176, 187-88, 449 N.E.2d 821, 826 (1983). Under *Montgomery*, a prior conviction is admissible to impeach a testifying defendant if (1) the conviction was for a crime punishable by death or imprisonment for more than one year; or (2) the conviction was for a crime involving dishonesty or false statement. In either case, the prior conviction is not admissible if (1) it is more than 10 years old, or (2) the probative value of the conviction is substantially outweighed by the danger of unfair prejudice. *Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698.

■ Under the mere-fact method of impeachment, the jury hears only about the existence of a prior conviction and not the specific crime of which the defendant was convicted. *People v. Holloman*, 304 Ill. App. 3d 177, 182, 709 N.E.2d 969, 972 (1999). The mere-fact method does not supplant the *Montgomery* analysis; however, in determining whether the probative value of the evidence sought to be admitted is substantially outweighed by the danger of unfair prejudice, the trial court considers mere-fact impeachment as an evidentiary alternative. *People v. Atkinson*, 288 Ill. App. 3d 102, 107, 679 N.E.2d 1266, 1269 (1997), *rev'd*, 186 Ill. 2d 450, 463-64, 713 N.E.2d 532, 538-39 (1999).

In *Atkinson*, the defendant was on trial for burglary when the State sought to impeach him with evidence of two prior burglary convictions. The defendant asked the trial court to use the mere-fact method, but the court declined to do so and admitted the evidence over defense objection. *Atkinson*, 288 Ill. App. 3d at 104-05, 679 N.E.2d at 1267-68. On review, this court held that the trial court had abused its discretion by refusing to apply the mere-fact method of impeachment. *Atkinson*, 288 Ill. App. 3d at 107, 679 N.E.2d at 1269. The Supreme Court of Illinois reversed that decision on further review. *Atkinson*, 186 Ill. 2d at 463-64, 713 N.E.2d at 538-39.

According to defendant, had the trial court in this case conducted the *Montgomery* balancing test in the manner required by *Atkinson*— that is, had it not considered mere-fact impeachment as an alterna-

tive—the evidence of his prior convictions would not have been admitted because its probative value was outweighed by the risk of unfair prejudice it presented.

Assuming *arguendo* that the supreme court intended its decision in *Atkinson* to have retroactive effect as to cases on appeal at the time it was decided, it would still provide no aid to defendant. We note that in *Atkinson*, the precise question before the supreme court was not, as here, whether a trial court abuses its discretion by allowing the mere-fact method of impeachment, but the opposite inquiry—that is, whether a trial court abuses its discretion by *not* considering the mere-fact method as part of its *Montgomery* analysis.

■ We acknowledge that the supreme court's discussion in *Atkinson* provides defendant with an argument that a trial court does abuse its discretion by allowing mere-fact impeachment. However, we need not decide that question because, in this case, defendant seeks reversal on the basis of plain error. Plain error occurs only in those cases where the evidence is closely balanced or the error is of such magnitude that the defendant was denied a fair trial. *Holloman*, 304 Ill. App. 3d at 184, 709 N.E.2d at 974. Simply put, we cannot conclude that defendant was prejudiced by the State's use of mere-fact impeachment to the degree necessary to apply the plain-error doctrine.

Had defendant's case been tried in accordance with *Atkinson*, the trial court, in its discretion, might well have permitted the jury to learn that defendant's four prior convictions were for burglary, one of the crimes for which defendant was then standing trial. See *Atkinson*, 186 Ill. 2d at 463, 713 N.E.2d at 538 (holding, "similarity [between the current charge and the prior convictions] alone does not mandate exclusion of the prior conviction"). We note that in *Atkinson* itself, the supreme court affirmed a trial court ruling that allowed the jury to learn that the defendant, then on trial for burglary, had two prior burglary convictions.

The State also argues that "an accused may not ask the trial court to proceed in a certain manner and then contend in a court of review that the order which he obtained was in error" (*People v. Lowe*, 153 Ill. 2d 195, 199, 606 N.E.2d 1167, 1169 (1992)). We agree. Despite its directive to trial courts not to use the mere-fact method in future cases, the *Atkinson* court did not indicate that trial courts have erred or abused their discretion when, upon either defendant's request or with his agreement, they used the mere-fact method in the past.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, P.J., concurs.

JUSTICE MYERSCOUGH, dissenting:

In *Atkinson*, the Supreme Court of Illinois clearly stated that "[t]he issue before this court is whether the mere-fact method of impeachment should be adopted in Illinois." *Atkinson*, 186 Ill. 2d at 455, 713 N.E.2d at 535. The court answered that question by stating "[w]e reject the mere-fact approach, and we affirm the trial court's admission of defendant's prior convictions pursuant to the *Montgomery* rule." *Atkinson*, 186 Ill. 2d at 464, 713 N.E.2d at 538.

The supreme court went on to explain:

"Potential prejudice to the defendant also supports rejection of the mere-fact approach. Under the mere-fact approach, the jury hears direct proof that the accused has been convicted of a felony, the exact nature of which is excluded from the jury. This bare announcement unavoidably invites jury speculation about the nature of the prior crime. There is a potential danger that the jury would speculate that the defendant was previously convicted of a more serious crime. Consequently, the mere-fact approach may result in unfair prejudice to the defendant arising from jury speculation as to the nature of the prior unnamed crime." *Atkinson*, 186 Ill. 2d at 459, 713 N.E.2d at 536-37.

Further, in *Atkinson*, Justice Rathje recognized the majority's position in his dissent: "I fail to see the basis for the majority's conclusion that, as a matter of law, it always is improper to use the mere-fact approach to impeach a testifying defendant." *Atkinson*, 186 Ill. 2d at 464, 713 N.E.2d at 539 (Rathje, J., dissenting, joined by McMorrow, J.).

The majority in this case, however, finds that the use of mere-fact impeachment did not constitute plain error because the evidence was neither closely balanced nor did the error deprive defendant of a fair trial. I disagree.

"Had defendant's case been tried in accordance with *Atkinson*, the trial court, in its discretion, might well have permitted the jury to learn that defendant's four prior convictions were for burglary, one of the crimes for which defendant was then standing trial." 308 Ill. App. 3d at 1018.

See also *Atkinson*, 186 Ill. 2d at 463, 713 N.E.2d at 538 (holding, "similarity [between the current charge and the prior convictions] alone does not mandate exclusion of the prior conviction[s]").

In this instance, the trial court, in fact, used the *Montgomery* balancing test and found that the danger of unfair prejudice outweighed the probative value of admitting the prior convictions. Since the court did in fact engage in that balancing test and found that it would not admit those prior convictions, the use of the mere-fact approach was error as a matter of law, and the defendant has been denied a fair trial. Defendant suffered clear prejudice here when the trial court allowed the mere-fact use of "several" felonies, as opposed to completely barring the use of the actual convictions.

Moreover, the majority, contrary to the record states:

> "Assuming arguendo that the supreme court intended its decision in *Atkinson* to have retroactive effect as to cases on appeal at the time it was decided, it would still provide no aid to defendant." 308 Ill. App. 3d at 1018.

However, *Atkinson* does in fact apply retroactively. Supreme court decisions apply to all pending cases unless it directs otherwise. As stated in a recent fifth district case citing *People v. Linder*, 186 Ill. 2d 67, 708 N.E.2d 1169 (1999):

> "The supreme court specifically held in *Linder* that its decision would be applied retroactively and that, as a general rule, supreme court 'decisions apply to all cases that are pending when the decision is announced, unless [the supreme court] directs otherwise.' *Linder*, 186 Ill. 2d at 75 [, 708 N.E.2d at 1173]. Here, the case at bar was pending in this court at the time the supreme court rendered its decision in *Linder*. Therefore, we are compelled to apply the rules set forth therein to the facts of this case." *People v. Bullard*, No. 5—98—0633, slip op. at 4 (August 13, 1999).

The supreme court did not indicate that the *Atkinson* holding should not be applied retroactively. Moreover, this court has previously recognized this doctrine in *People v. Corrie*, 294 Ill. App. 3d 496, 505, 690 N.E.2d 128, 134 (1998), wherein this court stated:

> "The supreme court's decisions generally apply to all cases that are pending—including pending on appeal—when the supreme court announces its decisions, unless the supreme court directs otherwise."

I would therefore reverse pursuant to the supreme court's rejection of the use of the mere-fact method of impeachment with prior convictions.