15 June 2000

NO. 4-98-0857

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

) Macon County

JOHN L. SPARKS, ) No. 98CF513

Defendant-Appellant. )

) Honorable

) James A. Hendrian,

) Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE COOK delivered the opinion of the

court:

A jury acquitted defendant John Sparks of home invasion and found him guilty of unlawful restraint (720 ILCS 5/10-3(a) (West 1998)).  In September 1998, the trial court sentenced him to three years in prison.  Sparks appeals, contending that the trial court erred in its handling of (1) his impeachment with prior convictions and (2) a jury question.  We affirm.

On April 6, 1998, Raphaela Brown was watching televi

sion in the living room of her single-level residential home in Decatur, Illinois.  Brown's steel front door was open, but her screen door was closed.  Sparks appeared at Brown's door and began demanding money because he felt that Brown had cheated him on a drug deal.  Brown testified that Sparks opened her door and entered her home, grabbing her and dragging her outside.  Both Sparks and Tina Vording (his girlfriend, who claimed to have been watching from across the street) maintain that Sparks did not enter but merely yelled through the screen door and that Brown came out of the house of her own accord.

In any event, a struggle between Sparks and Brown occurred outside.  Brown then ran to a neighbor's house and began to bang on his door and yell for help.  Her neighbor, John Robinson, testified that Sparks continued to grab and pull at Brown while she was on his porch, preventing her from entering.  Robinson eventually let Brown into his house and called police.  Sparks left the scene.

A responding police officer noted that Brown had three bleeding cuts on her inner elbow, a cut on her hand, and redness about her neck.  Brown says that she injured her hand when grabbing her screen door as Sparks pulled her from her home.  Sparks claims that Brown injured herself on the sidewalk pavement while they struggled.

I. IMPEACHMENT OF SPARKS THROUGH THE INTRODUCTION

OF A PRIOR CONVICTION

Sparks argues both that the jury was improperly in

formed of one of his prior criminal convictions and that the manner in which such information was presented was improper.  We address both contentions in turn.

After Sparks testified, the following discussions were held outside the presence of the jury:

"MR. CURRENT [(State's Attorney)]:  Your 

Honor, we would offer People's [e]xhibit[] 

[Nos.] 1 through 3 into evidence as rebuttal.  

People's exhibit [No.] 1, being an authen-

ticated copy of conviction indicating the 

[d]efendant was convicted of a felony in the 

[c]ircuit [c]ourt of Macon County on January 

13th of 1992 in case [No.] 91-CF-645.  People's 

[e]xhibit[] [Nos.] 2 and 3, being authenticated 

copies of conviction indicating that in each 

cause [d]efendant was convicted of a felony 

offense on March 16th of 1989.  We believe 

that all three of these convictions fit with-

in the parameters of [
People v. Montgomery
, 

47 Ill. 2d 510, 268 N.E.2d 695 (1971)].  We 

are specifically asking the [c]ourt to address 

the third prong of [
Montgomery
] and find that 

the probative value is not substantially out-

weighed by the danger of unfair prejudice.

THE COURT:  Mr. Rau.

MR. RAU [(Defense counsel)]:  Your Honor, 

I would object to the admissions to [
sic
] 

People's [e]xhibit[] [Nos.] 1, 2, and 3.  I 

would suggest the probative value is out-

weighed--or the prejudicial value is outweighed 

by the probative value [
sic
] in this cause.  I 

would further suggest that if the [c]ourt does 

allow some of the exhibits to be published, 

that the court limit the publication of one of 

the three, and further, just say that he has 

a prior felony conviction.

THE COURT:  The [c]ourt is going to admit 

People's [exhibit No.] 1, and I am going to 

deny [Nos.] 2 and 3.  I don't think we need 

more than one conviction for the--to show the 

prior conviction with regard to credibility.  

And I will allow People's [exhibit No.] 1 ***." 

Sparks first contends that the trial court did not properly determine that his prior convictions were allowable to impeach his credibility.  The Supreme Court of Illinois adopted (then-proposed) Federal Rule of Evidence 609 (see 28 U.S.C. app. Fed. R. Evid. 609 (1994)) in 
Montgomery
.  For the purpose of attacking a witness' credibility, evidence of a prior conviction is admissible only if (1) the crime was punishable by death or imprisonment in excess of one year or (2) the crime involved dishonesty or false statement regardless of the punishment.  
Montgomery
, 47 Ill. 2d at 516, 519, 268 N.E.2d at 698, 700.  In either case, however, the evidence is inadmissible if the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.  
Montgomery
, 47 Ill. 2d at 516, 519, 268 N.E.2d at 698, 700.

Two decades after handing down the 
Montgomery
 decision, the supreme court expressed dissatisfaction with its implementa

tion by the lower courts.  In 
People v. Williams
, 161 Ill. 2d 1, 38-39, 641 N.E.2d 296, 311-12 (1994) (
Williams I
), the court found after review of the case law "a regression toward allowing the State to introduce evidence of virtually all types of felony convictions for the purported reason of impeaching a testifying defendant."  But while the court "[could not] countenance *** further erosion" of the rule, it nonetheless found that the trial court's erroneous admission of such evidence in that case had not resulted in prejudice great enough to warrant reversal.  
Williams I
, 161 Ill. 2d at 41, 641 N.E.2d at 313.

Just two years later, ensuing confusion among the lower courts prompted the supreme court to address the issue yet again 
in 
People v. Williams
, 173 Ill. 2d 48, 670 N.E.2d 638 (1996) (
Williams II
).  The 
Williams II
 court emphasized the importance of conducting the balancing test of probative value versus unfair prejudice before admitting prior convictions for impeachment purposes and reiterated its commitment to the overall 
Montgomery
 framework, as established.  
Williams II
, 173 Ill. 2d at 81-83, 670 N.E.2d at 654-55.

In evaluating the trial court's methods in the instant case, we are guided by the rationale of 
Williams II
.  There, the court found no reason to suppose that the trial court had failed to conduct the proper balancing test.  The court noted the trial court's awareness of the issue stemming from the fact that the parties had referred to the balancing test in their arguments.  The court therefore declined to find error, although the trial court had not expressly articulated its employment of the test.  
Williams II
, 173 Ill. 2d at 83, 670 N.E.2d at 655.

We reach the same conclusion here.  The record indi

cates that the trial court was abundantly aware of the need to perform the 
Montgomery
 balancing; both sides had articulated same.  Indeed, the trial court expressly refused to admit two of Sparks' three prior convictions, citing the desirability of admitting only one with regard to Sparks' credibility.  The trial court's actions were well within its discretion.

But Sparks also complains of the method employed in conveying this information to the jury.  The trial court said this (apparently forgetting about the entire matter until during the State's closing arguments):

"[Prosecutor]:  When you go back to the 

jury room, you have to decide who to believe 

and who not to believe, and one of the factors 

you can consider is that [Sparks] is a con-

victed felon.

THE COURT:  That has not been read to 

them yet.  I am sorry.  I should have read 

that earlier.

The [c]ourt has admitted an exhibit outside 

the presence of the jury, and that exhibit 

shows that the defendant was convicted of a 

felony on January 13, 1992."

The court therefore informed the jury of the fact that Sparks had been convicted of a felony, but not of the nature of the specific charge (burglary).  This has come to be known as the "mere-fact" method of informing the jury of a witness' prior conviction(s).

The supreme court recently addressed mere-fact impeach

ment in 
People v. Atkinson
, 186 Ill. 2d 450, 713 N.E.2d 532 (1999), 
rev'g
 288 Ill. App. 3d 102, 679 N.E.2d 1266 (1997).  The trial court in 
Atkinson
 had been faced with the defendant's request that the mere-fact method be employed in his case.  The trial judge refused.  This court reversed and remanded for a new trial, determining that the trial judge had abused his discretion by refusing to employ the method.  
Atkinson
, 288 Ill. App. 3d at 107, 679 N.E.2d at 1269.  After review, the supreme court con

cluded that the 
Montgomery
 rule should not be altered by the mere-fact approach and that trial courts should not consider that method of impeachment.  
Atkinson
, 186 Ill. 2d at 461, 713 N.E.2d at 537.

The precedential value of 
Atkinson
 has been the subject of some dispute.  See 
People v. Dixon
, 308 Ill. App. 3d 1008, 721 N.E.2d 1172 (1999) (Myerscough, J., dissenting). 
 For the pur

poses of the case at bar, we give deference to the 
Atkinson
 opinion and assume 
that the trial court erred in using the mere-

fact approach.  For the reasons stated, we nonetheless decline to grant Sparks a new trial.  

We reiterate our finding that the trial court quite properly concluded, pursuant to its 
Montgomery
 analysis, that evidence of one of Sparks' prior convictions should be allowed for the purpose of impeachment.  That being the case, Sparks requested the mere-fact method for its admission.  Sparks now claims that he deserves a new trial because the court acceded to his request.  We cannot agree
.  Obviously an accused may not ask the trial court to proceed in a certain manner and then contend in a court of review that the order that he asked for and ob

tained was in error.  
People v. Lowe
, 153 Ill. 2d 195, 199, 606 N.E.2d 1167, 1169 (1992).  The issue is not waiver, it is estoppel, predicated upon policy concerns and the fair adminis

tration of justice.  To hold otherwise would encourage defendants to become duplicitous.  Thus, where "'a defendant *** invites *** the admission of evidence, 
even
 
though
 
it
 
be
 
improper
, he cannot complain.'"  (Emphasis added.)  
People v. Payne
, 98 Ill. 2d 45, 50, 456 N.E.2d 44, 46 (1983), quoting 
People v. Burage
, 23 Ill. 2d 280, 283, 178 N.E.2d 389, 391 (1961); see also 
People v. Cortes
, 181 Ill. 2d 249, 283, 692 N.E.2d 1129, 1144 (1998) ("A defendant may not be heard to complain of errors which he in

jected into his own trial.  [Citation.] *** [I]t would be mani

festly unfair for a party to obtain a second trial on the basis of error which he injected into the proceedings").  Any error here was made at the behest of Sparks himself and cannot furnish a basis for reversal.

Moreover, our review of the record reveals that the error was harmless.  First, we note that Sparks' testimony was cumulative of Vording's.  Sparks and Vording testified nearly identically.  The jury was therefore presented with that version of events independently of any prejudicial effect that the error may have had.  The evidence amply supported the jury's rejection of that version.  Second, the jury actually 
acquitted
 Sparks on the count of home invasion.  This verdict is inconsistent with the underlying concern of the prior convictions rule; namely, that a jury may become so impassioned upon hearing of a defen

dant's criminal history as to convict on character, not on evidence.  Acquittal is not the action of a jury so disposed.  

II. THE TRIAL COURT'S HANDLING OF A QUESTION POSED

BY THE JURY DURING DELIBERATIONS

After the jury retired to deliberate its verdict, it sent a written note to the court, stating:

"Your honor[,] the jury wishes a more 

detail[ed] explanation of unlawful restraint? 

Time limit? We believe the witness was grabbed.  

What is the time limit for restraint? What 

qualifies for restraint?"

Upon receiving the note, the following discussion was held:

"THE COURT:  Here is the question that the jurors sent out, and I will give it to both 

counsel at the same time and give you an 

opportunity to read it.

It would be the position of the [c]ourt 

that there is no magical time limit on the 

term 'restraint' that the term 'restraint' 

is a common term which they should understand, 

and they need to go back themselves and make 

the determination on that issue; that there 

is no easy answer I can give them on ***.

MR. RAU [(Defense counsel)]:  I would suggest that the [c]ourt say, 'You have the instructions.'  'You must deliberate make, your judgment based on'--there is no definition for whatever--.

THE COURT:  There is no definition that we have for what they are asking.  The term they 

are asking in my opinion, in the [c]ourt's 

opinion, is a common term which the average 

person should comprehend or understand.

MR. CURRENT [(Prosecutor)]:  I agree 

with that answer.

MR. RAU:  I wouldn't tell them it's a 

common answer.  I don't think that's appropri-

ate, and I would object to that.  What I think 

you ought to do is just simply tell them 

they have the instructions.

THE COURT:  We'll show your objection.  I do not agree with defense counsel, and we will show your input on the record.

MR. RAU:  Okay.

THE COURT:  Have Ted bring in only the 

     foreperson."

The foreperson was then apparently brought into the courtroom.  However, although defense counsel had been present at all times, the prosecutor raised concern that Sparks himself should be in attendance.  The foreperson was therefore apparently led back out of the courtroom until Sparks was brought in, whereupon the court continued:

"THE COURT:  Please be seated.

Mr. Foreman, I have received your question for the jury, and basically, I am not going to give you any additional detail, explanation of unlawful restraint.  In your instructions, you have the definition, and it tells what unlaw-

ful restraint is.  It is my position as a 

trial judge that these are words which should 

be understood by an ordinary average person.  

And you twelve jurors are simply going to 

have to discuss the matter and make that 

determination.  I can't think of anything 

additional that I can give you that would 

assist you in making that determination.  I 

think the wording in the instruction is 

fairly clear, and I think that just using 

your average common sense, that the twelve 

of you should be able to resolve the issue.  

Thank you.

THE FOREPERSON:  Yes, Your Honor."

These events prompt Sparks to make two contentions on appeal:  that the trial judge should have answered the jury's question and that the trial court improperly spoke to only the foreperson.

A trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clari

fication on a point of law.  
People v. Childs
, 159 Ill. 2d 217, 228-29, 636 N.E.2d 534, 539 (1994).  We construe the jury's question here to be whether the offense of unlawful restraint includes a time element and, if so, the parameters of same.  Because this question does not regard a finding of fact, or ask the trial court to apply such fact to the law, the question was one of pure law and the trial court therefore had a duty to accurately instruct the jury.

If a party is actually restrained without legal author

ity, the duration of the restraint, however short, is inconse

quential.  
People v. Jones
, 93 Ill. App. 3d 475, 479, 417 N.E.2d 647, 651 (1981) (restraint of three or four seconds); see also 
People v. Kuykendall
, 108 Ill. App. 3d 708, 439 N.E.2d 521 (1982) (restraint of two minutes); 
People v. Satterthwaite
, 72 Ill. App. 3d 483, 391 N.E.2d 162 (1979) (same).  The jury should have been accordingly informed.  But it follows directly from the law that no prejudice to Sparks occurred.  In the worst case, the jury adduced duration as an additional element of the offense.  As the offense actually contains no such element, Sparks stood only to gain by any higher burden employed.  (Indeed, we note that Sparks himself urged the trial court to leave the jury ignorant of the law.)  No reversible error occurred.

We also disapprove of the trial court's action in summoning the foreperson alone back to the courtroom.  Addressing the entire jury in open court, with the defendant present, is the proper procedure.  
People v. Tirado
, 254 Ill. App. 3d 497, 505, 626 N.E.2d 1114, 1121 (1993).  Nonetheless, we find that the court's actions here did not rise to the level of error.  First, unlike the authorities he cites, Sparks and his attorney were present throughout the exchange.  Second, the trial court did not give the foreperson substantive instructions.  The court's refusal to further instruct the jury was not particularly suscep

tible to misinterpretation.  
Cf.
 
People v. Adams
, 36 Ill. 2d 492, 498-99, 224 N.E.2d 252, 256 (1967) (no error where court, through the bailiff, advised jury to read instructions); 
People v. Jones
, 40 Ill. App. 3d 771, 775, 353 N.E.2d 79, 82 (1976) (where court had bailiff tell jury that court would not discuss matter with it, court's actions were not so much a communication as a refusal to communicate).

We affirm the judgment of the trial court.

Affirmed.

GARMAN, J., concurs.

MYERSCOUGH, J., specially concurs in part and dissents in part.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I specially concur in part, and I respectfully dissent in part.  Although the trial judge was certainly aware of the 
Montgomery
 balancing test, the record gives no indication that he conducted any balancing test, let alone a meaningful balancing test.  The judge did not conclude that the probative value would outweigh the prejudice.  Moreover, had the court conducted the meaningful balancing test, it most likely would have concluded that the probative value of admission of the conviction set forth in exhibit No. 1, burglary.  A crime similar to those for which defendant was on trial--home invasion and unlawful restraint--

would not outweigh the prejudice to defendant.  The trial judge instead merely opted for the easy alternative--use of the mere-

fact approach--obviating the need for the 
Montgomery
 balancing test.  

This court has previously recognized that to properly apply the 
Montgomery
 standard the trial court must consider the evidence that the jury will actually receive.  
People v. Holloman
, 304 Ill. App. 3d 177, 183, 709 N.E.2d 969, 973 (1999)  ("However, including in this evidentiary balancing process a fact which will never be admitted makes no sense").  
Moreover, the supreme court later rejected use of the mere-fact approach.  
People v. Atkinson
, 186 Ill. 2d 450, 464, 713 N.E.2d 532, 538 (1999).  Accordingly, the trial court, in this case, committed plain error when it utilized the mere-fact approach.

Further, defendant did not forfeit his right to object to use of the prior convictions or the use of the mere-fact approach by suggesting that the mere-fact approach be used in the alternative, nor is he estopped from raising the issue.  At the time that defendant argued in the alternative, the supreme court had not spoken to the issue in 
Atkinson
, and this court recom

mended use of the mere-fact method.  The defendant should not be penalized by this change in the law since 
Atkinson
 must be applied retroactively.  
People v. Corrie
, 294 Ill. App. 3d 496, 505, 690 N.E.2d 128, 134 (1998).

Nonetheless, I concur with the majority that this error was harmless.  

"[T]he jury actually 
acquitted
 Sparks on the count of home invasion.  This verdict is inconsistent with the underlying concern of the prior convictions rule; namely, that a jury may become so impassioned upon hearing of a defendant's criminal history as to con

vict on character, not on evidence.  Acquit

tal is not the action of a jury so disposed." (Emphasis in original.)  Slip op. at 8.

For this reason, I agree that the judgment of the trial court should be affirmed.